890 F.Supp. 791 (1995)
Eric Adam SCHNEIDER, Petitioner,
v.
Paul DELO, Respondent.
No. 90CV1968SNL.
United States District Court, E.D. Missouri, Eastern Division.
June 8, 1995.
*792 *793 *794 *795 *796 *797 *798 *799 N. Scott Rosenblum, Ramona L. Martin, Wittner and Poger, St. Louis, MO, for petitioner Eric Adam Schneider.
Frank A. Jung, Asst. Atty. Gen., Office of Atty. Gen. of Missouri, Ray Wagner, Counsel to the Governor, Jefferson City, MO, for respondent Paul Delo.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This matter is before the Court on Petitioner Schneider's First Amended Petition for Writ of Habeas Corpus, filed October 11, 1991. The State of Missouri filed its amended response on December 20, 1991. On February 14, 1992 petitioner filed his reply to the State's amended response.[1]
On October 30, 1985 a jury in the Circuit Court of Jefferson County convicted petitioner of the capital murders of Ronald Thompson and Richard Schwendemann. The jury recommended a sentence of death for the murder convictions. On December 4, 1985 Judge John L. Anderson sentenced petitioner to death. Petitioner filed a motion for a new trial which the trial court denied. The Missouri Supreme Court affirmed the convictions and death sentence on direct appeal. State v. Schneider, 736 S.W.2d 392 (Mo.1987). On February 4, 1988 petitioner filed a pro se *800 Rule 29.15 motion for post-conviction relief.[2] The sentencing court appointed counsel to represent him and appointed counsel filed an amended Rule 29.15 motion. After holding evidentiary hearings on August 24, 1988 and January 6, 1989, the court denied the amended Rule 29.15 motion. Petitioner appealed the denial of his amended Rule 29.15 motion. On April 17, 1990 the Missouri Supreme Court denied the appeal, and shortly thereafter, denied petitioner's motion for rehearing. Schneider v. State, 787 S.W.2d 718 (Mo.1990). On October 1, 1990 the United States Supreme Court denied petitioner's Writ of Certiorari. On October 16, 1990 petitioner filed his Rule 91 state petition for writ of habeas corpus. That same day the Missouri Supreme Court denied his Rule 91 state petition for writ of habeas corpus. It further set an execution date for October 18, 1990.
On October 17, 1990 petitioner filed a motion for stay of execution with this Court, his original petition for writ of habeas corpus, and a motion for appointment of counsel. On October 17, 1990 this Court entered its order staying the execution date of October 18, 1990 and appointing counsel for petitioner. Appointed counsel then proceeded to file the instant amended petition for writ of habeas corpus.
Petitioner has alleged twenty-five (25) grounds of error which he believes support his claim for federal habeas corpus relief. Ground III, alleging ineffective assistance of trial counsel at both the guilt phase and sentencing phase of trial, lists thirty-six (36) separate instances of ineffective assistance of trial counsel. The circumstances of the murders for which Mr. Schneider was convicted are discussed in detail by the Missouri Supreme Court in State v. Schneider, 736 S.W.2d 392 (Mo.1987) and will not be reiterated in this memorandum, except when necessary to support a finding or conclusion reached by this Court. Other than the parties' pleadings, the Court has for review various State exhibits, including but not limited to, the trial transcript (Volumes I-V), preliminary hearing transcript, deposition of David Morgan (one of petitioner's two co-defendants), briefs regarding the direct appeal, transcript of the amended Rule 29.15 evidentiary hearings, briefs regarding the appeal of the denial of the amended Rule 29.15, certified copies of the Missouri Supreme Court's decisions regarding this case, and xerox copies of photographs of the victims. Also submitted for the Court's consideration are petitioner's exhibits 1-10 consisting primarily of the affidavits of his post-conviction counsel, affidavits and psychiatric exam findings of Dr. A.E. Daniel, and affidavits of various family members of the petitioner. Petitioner seeks to expand the record pursuant to Rule 7(a)-(c) of the Rules Governing Section 2254 Cases. As will be elaborated further in this memorandum, the majority of the petitioner's grounds for federal habeas relief are procedurally barred; the remaining grounds can be sufficiently reviewed based upon the record that was presented to the state courts. Since these documents were not part of the state court record, and the petitioner has not offered any reason as to why these documents were not made a part of the state court record, this Court will not engage in further factfinding based upon an expanded record presented to this Court. See, Bolder v. Armontrout, 921 F.2d 1359, 1364 (8th Cir. 1990); Byrd v. Armontrout, 686 F.Supp. 743, 778 (E.D.Mo.1988), aff'd 880 F.2d 1 (8th Cir. 1989) [referred to in Byrd v. Delo, 942 F.2d 1226, 1230 (8th Cir.1991) (consideration of petitioner's third petition for writ of habeas corpus and denying same)].
Similarly, petitioner's request that he be granted an evidentiary hearing and time to conduct further discovery will be denied. The Court has carefully reviewed the pleadings, the trial and evidentiary hearings transcripts, and the state courts decisions regarding this case. Upon review of these documents the Court finds that the record as it now exists is adequate and that no evidentiary hearing or further discovery is required. See, 28 U.S.C. § 2254, Rules 6 and 8(a).

*801 Procedural Bar to Petitioner's Claims

The State contends that a majority of the petitioner's grounds for federal habeas relief are procedurally defaulted because he did not adequately present them to the Missouri state courts.[3] Federal habeas review is barred when a state court has not decided a federal claim on the merits because the petitioner violated a state procedural law. In such cases, the state judgment rests on independent and adequate state procedural grounds. Coleman v. Thompson, 501 U.S. 722, 730, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991); Wainwright v. Sykes, 433 U.S. 72, 81, 87, 97 S.Ct. 2497, 2503-04, 2506-07, 53 L.Ed.2d 594 (1977). Before a petitioner can bring a § 2254 action, he must have presented the same legal theories and factual bases to the state courts. Forest v. Delo, 52 F.3d 716 (8th Cir.1995); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir.1995); Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir.1994) citing Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982). In order for a § 2254 petitioner to avoid default, Missouri post-conviction procedure mandates that each and every claim be presented "at each step of the judicial process". Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir.1994); Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir.1994) quoting Benson v. State, 611 S.W.2d 538, 541 (Mo.App.1980). Claims not presented in the state courts through post-conviction relief procedures are procedurally barred unless the petitioner can demonstrate both cause for the procedural default and actual prejudice resulting from the default; or can show that failure to consider the claims will result in a fundamental miscarriage of justice because petitioner has evidence of his "actual innocence". Schlup v. Delo, ___ U.S. ___, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); Sawyer v. Whitley, ___ U.S. ___, ___, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992); Coleman v. Thompson, 501 U.S. at 750, 111 S.Ct. at 2564-65; Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); Schleeper, at 737; Battle v. Delo, at 1552.
Schneider contends that his claims are not procedurally barred pursuant to Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) because the Missouri Supreme Court in ruling upon his Rule 91 state habeas petition did not "clearly and expressly" state that its denial of the petition was due to procedural default; i.e. its "unexplained ruling" should be considered a ruling on the merits of the claims contained in the petition. In the alternative, Schneider argues that even if his claims (or a majority of them) are procedurally barred, he can demonstrate "cause and actual prejudice" warranting this Court's review of his claims.[4]
In order to establish cause, petitioner must show that some objective factor external to the defense impeded his counsel or his efforts to comply with the state procedural requirements. Coleman v. Thompson, 501 U.S. at 750, 111 S.Ct. at 2564-65; Murray v. Carrier, 477 U.S. at 492, 106 S.Ct. at 2647-48. Examples of such "cause" are a "showing that the factual or legal basis for a claim was not reasonably available to counsel", or that "some interference by officials made compliance impracticable". Murray v. Carrier, 477 U.S. at 488, 106 S.Ct. at 2645.
Plaintiff consistently argues that even if this Court considers his claims procedurally barred, he has met the "cause" test by the ineffective assistance of his direct appeal counsel, Rule 29.15 post-conviction relief counsel, and Rule 29.15 motion appellate counsel. He argues that the ineffective assistance of his post-conviction counsel for failing to raise his claims on direct appeal, or in his Rule 29.15 motion, or in his appeal of the denial of his 29.15 motion, constitutes "cause" and that the fact that his death sentences have been upheld constitutes "actual prejudice". For reasons which will be *802 set forth when addressing the individual claims, plaintiff has failed to show "cause" for his procedural defaults.
Petitioner's argument that the filing of his Rule 91 state habeas petition and the Missouri Supreme Court's denial of same excuses his procedural default is meritless. Petitioner contends that, pursuant to Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the Missouri Supreme Court's unexplained denial of his Rule 91 state habeas petition constituted a decision on the merits that lifted any procedural bar. In Harris v. Reed, supra, the Supreme Court stated "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Id., 489 U.S. at 263. However, the Supreme Court clarified the Harris "plain statement rule" in Coleman v. Thompson, supra. The Court explained:
In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.
Id., 501 U.S. at 735, 111 S.Ct. at 2557.
In petitioner's case, the Missouri Supreme Court denied his Rule 91 petition the same day it was filed. In a single sentence, the Court ruled:
Now at this day, on consideration of the petition for writ of habeas corpus herein to the said respondent, it is ordered by the court here that the said petition be, and the same is hereby denied.
State's Exhibit P.
In Byrd v. Delo, 942 F.2d 1226 (8th Cir.1991), the Eighth Circuit Court of Appeals addressed the same situation that exists in the instant case. In Byrd v. Delo, supra, the Missouri Supreme Court denied Byrd's Rule 91 petition using the exact same language as it did in denying Schneider's Rule 91 petition. Not only was the language the same, but the Court had denied Byrd's petition also on the same day it was filed. The Eighth Circuit Court of Appeals found that "[t]he order of the Supreme Court of Missouri denying his Rule 91 habeas petition is simply silent as to the underlying grounds and reasons. It does not `fairly appear[] to rest primarily on federal law, or to be interwoven with the federal law ...' The Harris presumption that federal law was the basis of a state court's decision is therefore inapplicable." Byrd v. Delo, at 1231. The Missouri Supreme Court's language, coupled with the fact that the petition was denied the same day it was filed, indicated to the Eighth Circuit Court of Appeals that "the ground of rejection was not an examination of the merits of the petition, which surely would have taken more time, but rather the application of a procedural rule believed by the Missouri Supreme Court to be plain and obvious"; said rule being that a Rule 91 petition cannot be used to raise claims that should have been raised on direct appeal or in a Rule 29.15 (or its predecessor, Rule 27.26) proceeding. Id., at 1231-32; see also, Jolly v. Gammon, 28 F.3d 51 (8th Cir.1994) (application of Coleman to unexplained denial of motion to recall the mandate and finding such a denial does not open up the merits of previously defaulted claims).
In light of the afore-stated findings, the Court will now address each of the petitioner's twenty-five (25) claims supporting his petition for federal habeas relief.

I. Trial Court erred in excluding certain mitigating evidence during sentencing phase of trial

A. Exclusion of photographs of petitioner as a child
Petitioner contends that the trial court erred in excluding photographs of the petitioner as a child which the petitioner attempted to offer as mitigating evidence during the sentencing phase of his trial. This claim was not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did *803 not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); Foster v. Delo, 39 F.3d 873, 880 (8th Cir.1994); Byrd v. Delo, supra.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his direct appeal counsel was ineffective when counsel failed to raise this claim before the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because it is well-established that there is no constitutional right to counsel in state post-conviction proceedings. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir.1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra. "Where there is no constitutional right to counsel there can be no constitutional right to effective assistance of counsel." Pollard v. Delo, 28 F.3d at 888 citing Wainwright v. Torna, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982); Nolan v. Armontrout, 973 F.2d 615, 617 (8th Cir.1992). Thus, post-conviction counsel's failure to raise a claim cannot constitute cause for purposes of overcoming a procedural default. Coleman v. Thompson, 501 U.S. at 753-55, 111 S.Ct. at 2566-68; Jolly v. Gammon, at 54. Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced. However, the Court does note that although the photographs of the petitioner were not admitted, his mother did testify to the petitioner's life as a child. Given his mother's testimony, the Court does not believe that the petitioner was actually prejudiced by the trial court's ruling so as to infect the entire trial with error.

B. Exclusion of evidence of co-defendant David Morgan's plea agreement with the State during sentencing phase of the trial
Petitioner argues that the trial court erred in precluding him from presenting evidence of co-defendant David Morgan's plea agreement with the State. He contends that the plea agreement was a relevant "mitigating circumstance" which the jury should have been allowed to hear and consider. Schneider presented this claim to the Missouri Supreme Court on direct appeal; it rejected the claim finding that exclusion of evidence of the plea agreement did not violate Missouri law or petitioner's constitutional rights under the Eighth and Fourteenth Amendments. Schneider v. State, 736 S.W.2d 392, 395-397 (Mo.1987).
Under the terms of his plea agreement, Morgan was to plead guilty to two counts of felony murder, and to "testify truthfully" if he was called as a witness. In exchange the State agreed to recommend that Morgan be sentenced to concurrent thirty (30) year terms of imprisonment on the felony murder counts and to dismiss the other pending charges, including two counts of capital murder. Schneider v. State, 736 S.W.2d at 396. Although both the State and petitioner endorsed Morgan as a witness at petitioner's trial, neither elected to call him as a witness. The State filed a motion in limine to prohibit any reference to Morgan's plea agreement; the trial court sustained the motion. Schneider v. State, 736 S.W.2d at 396. When petitioner attempted to introduce evidence of the plea agreement at the penalty phase of his trial, the trial court denied the offer of proof and ordered both sides to desist from mentioning the plea agreement. Id., at 396.
Under Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1976), a defendant should not be precluded from introducing mitigating evidence which is relevant to the "defendant's character, prior record, or the circumstances of his offense." Id., 438 U.S. at 604-05, 98 S.Ct. at 2965. This constitutional categorizing of acceptable mitigating evidence is embodied in Missouri statute § 565.032.3 which provides that a jury shall consider (in addition to other factors specified in the statute),
[a]ny mitigating or aggravating circumstances otherwise authorized by law and supported by the evidence and requested by a party including any aspect of the defendant's character, the record of any prior criminal convictions, and pleas and findings of guilty and admissions of guilt of *804 any crime or pleas of nolo contendre of the defendant[.]
The Missouri Supreme Court considered the language of Lockett v. Ohio, supra and § 565.032.3 R.S.Mo. and determined that the evidence pertaining to Morgan's plea agreement was not relevant, and that the trial court had not abused its discretion in prohibiting this evidence. Schneider v. State, 736 S.W.2d at 396-97.
The admissibility of evidence in a state trial is a matter of state law. Clark v. Groose, 16 F.3d 960, 963 (8th Cir.1994) citing Glaze v. Redman, 986 F.2d 1192, 1195 (8th Cir.1993); Schneider v. Erickson, 7 F.3d 760, 762 (8th Cir.1993). Ordinarily a federal court, in reviewing a federal habeas claim predicated on state law, is bound by the state court's interpretation of state law. Clark v. Groose, at 963. However, a federal court may grant habeas relief when a state court's evidentiary ruling "infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." Clark v. Groose, at 963 quoting Turner v. Armontrout, 845 F.2d 165 (8th Cir.1988).
After reviewing the facts of this case and the Missouri Supreme Court's ruling, this Court finds that the trial court did not err in prohibiting the petitioner from introducing evidence of the plea agreement and that neither the trial court nor the Missouri Supreme Court's evidentiary ruling infringed upon a specific constitutional protection or amounted to a denial of due process.
Morgan's plea agreement did not pertain to the defendant's character nor to his prior record. Although Morgan was a co-defendant and his activities in the crime were relevant to the "circumstances of the offense", his plea agreement only pertained to Morgan's sentencing situation. The fact that he had entered into a plea agreement would only have been relevant if he had testified at trial; it certainly would have been permissible for petitioner to use the plea agreement to impeach Morgan's credibility on cross-examination. However, since Morgan did not testify, evidence of the plea agreement was not relevant pursuant to Lockett v. Ohio, supra or § 565.032.3 R.S.Mo.
Furthermore, petitioner's argument that the jury should have considered evidence of the plea agreement in order to conduct a proportionality review is totally meritless. Under Missouri law, it is the Missouri Supreme Court which conducts the proportionality review, not the jury. § 565.035.3(3) R.S.Mo. Missouri law clearly imposes a duty upon the jury to view each capital case individually on its merits as well as the responsibility of the individual defendant. State v. Shaw, 636 S.W.2d 667, 675 (Mo.1982). The trial court did not abuse its discretion is prohibiting the introduction of Morgan's plea agreement. Claim I(b) will be denied as grounds for federal habeas relief.

II. Trial Court erred in striking eight (8) veniremen for cause, thereby creating a death-prone jury
Petitioner argues that the trial court improperly created a "death-prone" jury by striking veniremembers Phegley, Sharpe, Arnhardt, Barreca, Lowen, Roesh, Smith and Rutherford for cause. This claim was not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Nave v. Delo, 22 F.3d 802, 808 (8th Cir.1994) citing Smith v. Groose, 998 F.2d 1439, 1441 (8th Cir.1993) ("The failure to satisfy state procedural requirements serves as an adequate and independent state procedural bar to review.").
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra. Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.
*805 Even if this claim were not procedurally barred, it fails to provide a ground for federal habeas relief. A defendant in a criminal case has a constitutional right to an impartial jury. Turner v. Murray, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986). In a capital murder case, a venireperson may be excused for cause because his or her views on capital punishment would "prevent or substantially impair the performance of his [her] duties as a juror in accordance with his [her] instructions." Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). Consequently, a venireperson may be excused for cause if his or her personal beliefs or views would prevent or substantially impair that venireperson from objectively listening to the evidence, abiding by the law, following the trial court's instructions, and considering the imposition of either a death sentence or a life sentence. Under Missouri law, a juror must be able to consider both sentences. State v. Murray, 744 S.W.2d 762, 768 (Mo.1988); State v. Smith, 649 S.W.2d 417, 425 (Mo.1983).
A review of the merits of this claim requires the Court to examine the state court record. Whatever findings of fact the state court made are entitled to a presumption of correctness and will not be disturbed if they are fairly supported by the record. Forest v. Delo, 52 F.3d 716, 720-21 (8th Cir.1995); Murray v. Delo, 34 F.3d 1367, 1377 (8th Cir.1994). The impartiality of a juror is a question of fact entitled to this presumption of correctness. Patton v. Yount, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984); Murray v. Delo, at 1377.
The Court has reviewed portions of the trial transcript pertaining to these jurors and finds that these jurors did voice opinions or views which reasonably indicated an inability to participate in sentencing in an impartial manner. Trial Transcript, Vols. I and II, pgs. 279-781. The Court finds that the trial court did not abuse its discretion in striking these jurors for cause.[5] Trial Transcript, pgs. 773, 780.

III. Ineffective assistance of trial counsel during both the guilt phase and sentencing phase of trial

A. Failure to cite caselaw in motion to suppress
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, supra; Foster v. Delo, at 880; Byrd v. Delo, supra.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.

B. Failure to investigate mental illness defenses
Both the State and the petitioner aver that this claim has been exhausted because it was raised in petitioner's 29.15 motion, the appeal of the denial of said motion, and in petitioner's Rule 91 state habeas petition. After reviewing the state court record, this Court finds that this claim, as raised in the present federal habeas petition, was never presented to the state courts.
In his amended 29.15 motion, petitioner claimed that trial counsel was ineffective because he "failed to secure a psychiatric examination for defendant or to explore the possibility of a psychiatric defense in spite of evidence that defendant may suffer from a *806 mental disease or defect precluding responsibility." State's Exhibit J  Legal File; First Amended Motion for Correction of Sentence pursuant to Rule 29.15 Missouri Supreme Court Rules, pg. 76. The motion court held two evidentiary hearings on the amended Rule 29.15 motion. It is clear from the motion court's order denying the motion that it addressed the claim as one of failing to secure a psychiatric examination. The motion court stated:
Petitioner contends that he was denied effective assistance of counsel by trial counsel's failure to obtain a psychiatric examination of the Defendant. Movant adduced relevant evidence at the hearing on this motion from both trial counsel and A.E. Daniel, M.D., his chosen psychiatrist.
Trial counsel, who himself has a B.A. in psychology, indicated he had considered the possibility of a psychological examination upon the Defendant, but had ruled it out. Counsel saw no indication of a mental disease or defect, nor saw any history of such in his interviews with the movant's family. More importantly, an examination under Chapter 552 performed in January of 1983 indicated no mental defect. Counsel testified that he has a policy of not permitting a client to discuss the case with third parties without a good reason for doing so. With no indication for the efficacy of an examination, and fearing that any examination could provide aggravating circumstances, given the Petitioner's record and manner, counsel decided not to have any psychological examination performed. This is very similar to the issue in Strickland [footnote omitted]. Dr. Daniel, after examination of Movant testified that Defendant had a history of attention deficit disorder (hyperactivity) and was capable of rehabilitation based on his remorse. Movant failed to show how Defendant's history could reasonably change the outcome of the case and the record, as noted by the Missouri Supreme Court, indicates a lack of remorse by the Petitioner. As the Supreme Court noted in Strickland, "There are countless ways to provide effective assistance of counsel in a given case. Even the best criminal defense attorney's [sic] would not defend a particular client in the same way." Strickland at 689.
State's Exhibit J  Legal File, Motion Court's Findings of Fact and Conclusions of Law (re Amended Rule 29.15 Motion), pgs. 6-7 (pgs. 18-19 of the exhibit). In his brief on appeal of denial of the Rule 29.15 motion, petitioner's Point I on appeal reads as follows:
THE TRIAL COURT CLEARLY ERRED IN DENYING APPELLANT'S MOTION TO VACATE SENTENCE BECAUSE COUNSEL WAS INEFFECTIVE IN FAILING TO SEEK A MENTAL EVALUATION IN MITIGATION OF PUNISHMENT IN THAT COUNSEL SHOULD HAVE BEEN PUT ON NOTICE, BY APPELLANT'S DRUG ABUSE, HYPERACTIVITY, CUTTING OF HIS WRIST, HIS TWO SISTER'S [sic] PSYCHIATRIC HISTORY, AND THE ABSENCE OF A DIAGNOSIS OF A SOCIOPATHIC CONDITION, THAT AN EXAMINATION WOULD PROVE HELPFUL AND WOULD NOT PROVE HARMFUL. APPELLANT WAS PREJUDICED IN THAT THE JURY WAS DENIED IMPORTANT INFORMATION ON WHICH TO BASE A LIFE SENTENCE, PARTICULARLY HIS CAPACITY FOR FEELING, [sic] REMORSE, AND REHABILITATION.
State's Exhibit K, pg. 15. The body of the brief clearly addresses the issue as trial counsel's ineffectiveness for failing to secure a psychiatric examination in order to present mitigating evidence during the penalty phase. The State also presented the issue on appeal as one of trial counsel's ineffectiveness for failing to obtain a mental evaluation for purposes of providing mitigating evidence at the penalty phase. State's Exhibit L.
Finally, the Missouri Supreme Court clearly addressed the issue on appeal as trial counsel's ineffectiveness for failing to secure a psychiatric examination. "Schneider charges counsel was ineffective in failing to seek a mental evaluation." Schneider v. State, 787 S.W.2d 718, 720 (Mo.1990). The Court reviewed the testimony adduced at the 29.15 motion hearings and found that trial counsel decided "as a matter of trial strategy, *807 not to have a psychological examination done." Schneider v. State, 787 S.W.2d at 720. The court concludes that "[m]ovant fails his burden to show how a psychological evaluation would have changed the outcome of the case." Id., at 721.
However, in his amended federal habeas petition, petitioner now states his claim as:
"[n]ot only is Petitioner alleging his trial counsel was ineffective for failing to investigate the defense of mental disease or defect, but also for failing to investigate: 1) evidence of a diminished capacity defense; 2) defense of lack of the requisite mental intent to commit first degree murder or the underlying felony for felony murder; and 3) defense of insanity at the time of the offense as well as at the time of trial and sentencing. This inadequacy was shown by counsel's failure to gather a social and medical history of Petitioner and to have a psychiatric evaluation performed on Petitioner to determine if any of the aforementioned defenses could be raised."
Petitioner's Traverse to Respondent's Response, pg. 12.
"The particular factual and legal basis for the claim asserted in a state prisoner's federal habeas petition must have been brought to the attention of the state courts in order to satisfy the exhaustion of state remedies requirement of 28 U.S.C. § 2254(b)." Forest v. Delo, at pg. 721 citing Keithley v. Hopkins, at 1217; Flieger v. Delo, 16 F.3d 878, 884-85 (8th Cir.1994). The only portion of this claim that is not procedurally defaulted is trial counsel's alleged ineffectiveness for not securing a mental examination for purposes of presenting mitigating evidence at the penalty phase. The other portions of this claim, i.e. failing to investigate a variety of mental defenses, are procedurally defaulted and petitioner has failed to make any showing of cause for failing to present these portions of his claim in his 29.15 motion or appeal of the denial of the motion.
In order to prevail on a habeas claim of ineffective assistance of trial counsel, petitioner must satisfy the two-prong test established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). He must show that 1) trial counsel's performance fell below an objective standard of reasonableness in that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would use under similar circumstances; and 2) that he was prejudiced by this deficiency. Id., 466 U.S. at 687-88, 104 S.Ct. at 2064-65; Lawrence v. Armontrout, 31 F.3d 662, 666 (8th Cir.1994); Flieger v. Delo, at 886; Battle v. Delo, at 1554. Petitioner was prejudiced by his trial counsel's ineffective performance if he can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different", Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, or trial counsel's errors rendered the proceeding unreliable or fundamentally unfair, Lockhart v. Fretwell, ___ U.S. ___, ___, 113 S.Ct. 838, 844, 122 L.Ed.2d 180; Adams v. Leapley, 31 F.3d 713, 714 (8th Cir.1994); Battle v. Delo, at 1554. However, trial counsel's representation is entitled to a presumption of reasonableness, and the courts should review counsel's performance as of the time of trial and "not view it with the distorting tint of hindsight." Battle v. Delo, at 1555 citing Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. Trial counsel's reasonable trial strategies cannot constitute ineffective assistance of counsel, even if they prove to be unsuccessful. Flieger v. Delo, at 886 citing Riley v. Wyrick, 712 F.2d 382, 385 (8th Cir. 1983). This Court will review the record because the issue of ineffective assistance of counsel is a mixed issue of law and fact, Flieger v. Delo, at 886, but as noted before, the factual findings of the state courts (both trial and appellate) are presumed to be correct. Id., at 886 citing Sumner v. Mata, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981).
Petitioner contends that his trial counsel was ineffective for not securing a mental exam in order to present mitigating evidence. Both the 29.15 motion court and the Missouri Supreme Court extensively discussed the relevant facts behind trial counsel's decision. The state courts considered trial counsel's explanation that petitioner was always coherent, understandable, and appeared to fully appreciate the nature of the *808 charges against him. A mental examination under Chapter 522 in January of 1983 (in connection with other criminal charges) was "unremarkable"  no evidence of mental disease or defect. Counsel was concerned about petitioner speaking with a third party because petitioner was denying guilt at the time. Counsel feared an unfavorable psychiatric report and having the psychiatrist testify as to petitioner's denial of committing the murders would leave a bad impression with the jury. Counsel also feared that a psychiatric examination would open up the door for prejudicial, discoverable information. Given petitioner's criminal record and demeanor, counsel believed the best strategy was not to have a psychological examination done. See, Schneider v. State, 787 S.W.2d at 720-21; State's Exhibit J  Legal File, pgs. 18-19 (Motion Court Order of June 27, 1989, pgs. 6-7).
The Court has examined the state courts' factual findings and concurs that the record supports trial counsel's decision as being reasonable in light of the circumstances at the time. Schneider asserts that an examination was warranted because of his drug abuse, hyperactivity, cutting of his wrist, and two of his sisters' psychiatric history. He maintains an examination would have revealed his capacity for remorse, rehabilitation, and productive work. He offers several exhibits (not offered to the state courts) evidencing psychological and social services reports produced after he was tried and convicted for the capital murders.
These exhibits are irrelevant to this Court's consideration of whether trial counsel's actions were reasonable given the circumstances present at the time of trial. The only document which has any bearing on the Court's inquiry is the January 21, 1983 mental examination report prepared by the Missouri Department of Corrections  Classification and Assignment Unit. According to this report, petitioner claimed to have been drug-free since 1981. His only treatment for any psychological problem was in 1982 when he slashed his wrist while in the St. Louis City Work House. According to the report, Petitioner admitted that he had been depressed over his life at the time. He further admitted that no one knowledgable about the incident believed he was seriously trying to take his life. He claimed that he had never made any other "suicide attempts". There is no mention of hyperactivity as a clinical diagnosis. This report mirrors the earlier findings of staff personnel at the Malcolm Bliss medical facility. State's Exhibit J, pgs. 57-60 (report dated January 4, 1983).
Petitioner has failed to make any showing that trial counsel's decision to forego a psychiatric examination was unreasonable, and that there is a reasonable probability that having the exam would have changed the outcome of his sentencing. Plaintiff had several felony convictions. There is no evidence on the record that plaintiff had been abusing drugs prior to the commission of the murders. A recent 522 mental exam showed no evidence of mental disease or defect. Plaintiff does not dispute trial counsel's testimony that he was coherent and fully understood the nature of the charges and the punishment he faced. Plaintiff has failed to show how an alleged childhood diagnosis of hyperactivity[6] would have convinced a jury to relieve him of the responsibility of planning and committing two heinous brutal murders as a twenty-four (24) year old man. As for the mental exam demonstrating plaintiff's capacity for remorse, the Court is not surprised that a defendant facing a death sentence would acquire such remorse for his acts; however, this Court is not convinced that a jury would have been moved by this "after-the-fact" remorse, especially since the trial record shows that "[n]ot only is there no showing of remorse on the part of this defendant, but to the contrary he demonstrated an offensive air of braggadocio when boasting to *809 others how he brought about the deaths of the victims." State v. Schneider, 736 S.W.2d 392, 404 (Mo.1987). Trial counsel's decision not to secure a mental examination was reasonable trial strategy and petitioner has failed to show how a psychological evaluation would have changed the outcome of the case.

C. Failure to object to the State's strikes for cause

D. Failure to object to the trial court's dismissal of venirepersons holding World Series tickets

E. Failure to object to trial court excusing venirepersons with minor children

F. Failure to object to trial court excusing venirepersons with work-related problems
Petitioner failed to raise any of the four above-stated incidents of trial counsel's alleged deficient performance in his 29.15 motion or in his appeal of denial of said motion; consequently, they are procedurally barred. Foster v. Delo, at 880.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise these claims before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.

G. Failure to investigate and present evidence regarding a broken window in petitioner's car
Petitioner raised this claim in his 29.15 motion but failed to raise it in his appeal of the denial of the motion. Failure to raise a claim on appeal from the denial of a post-conviction motion procedurally bars federal habeas review of the claim. Jolly v. Gammon, at 53; Gilmore v. Armontrout, 861 F.2d 1061, 1065 (8th Cir.1988).
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 appeal counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 appeal counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Jolly v. Gammon, at 54.[7]

H. Failure to investigate and present evidence that the State's witness Tom Herrick knew that his mother Barbara Holt was facing criminal charges
The essence of petitioner's claim is that Tom Herrick's testimony was not credible because his mother Barbara Holt (co-defendant Charles Palmer's girlfriend) was facing criminal charges and was in danger of losing custody of her other children. Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, supra; Foster v. Delo, at 880; Byrd v. Delo, supra.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel and 29.15 appeal counsel were ineffective for failing to raise this claim before the motion court and the Missouri Supreme Court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 motion and appeal counsel cannot constitute cause for purposes of overcoming the procedural *810 default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Jolly v. Gammon, at 54; Pollard v. Delo, at 888; Clark v. Groose, at 965.
Even if this claim were not procedurally barred, petitioner has failed to show that he was actually prejudiced by trial counsel's failure to examine Tom Herrick as to his motives for testifying. The trial record shows that trial counsel extensively questioned Ms. Holt directly as to her motives for testifying. Trial Transcript, pgs. 1547-1552. The trial record shows that counsel explored the issue of police pressure on Ms. Holt to testify (against the petitioner). Since the issue had been presented and explored with the witness who would have been most knowledgeable about it, counsel's decision not to resurrect the matter with her son Tom Herrick was reasonable. Petitioner has failed to show Strickland prejudice.

I. Failure to present alibi defense by presenting evidence that petitioner's girlfriend Dana Messner was "coerced" into not testifying
Petitioner raised this claim in his 29.15 motion but failed to raise it in his appeal of the denial of the motion. Failure to raise a claim on appeal from the denial of a post-conviction motion procedurally bars federal habeas review of the claim. Jolly v. Gammon, at 53; Gilmore v. Armontrout, 861 F.2d 1061, 1065 (8th Cir.1988).
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 appeal counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 appeal counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Jolly v. Gammon, at 54.

J. Failure to exclude evidence of "inconclusive" blood and fingerprint tests
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, supra; Foster v. Delo, at 880; Byrd v. Delo, supra.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.

K. Failure to present evidence that co-defendant Charles Palmer and his girlfriend Barbara Holt "routinely rolled queers"
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, supra; Foster v. Delo, at 880; Byrd v. Delo, supra.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the trial court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.

*811 L. Failure to investigate and present alibi evidence regarding Pat Woodside
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, supra; Foster v. Delo, at 880; Byrd v. Delo, supra.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.

M. Failure to adequately litigate motion for change of venue
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, supra; Foster v. Delo, at 880; Byrd v. Delo, supra.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.
Furthermore, the trial record shows that trial counsel submitted approximately sixty-five (65) newspaper articles, radio broadcast or television reports pertaining to the case. He also presented the testimony of a State Representative and Jefferson County Commissioner who were former neighbors of the victims. Trial Transcript, pgs. 9-39; State v. Schneider, 736 S.W.2d at 403. Finally, trial counsel extensively argued on his client's behalf to the trial court why he believed a change in venue was necessary. Trial Transcript, pgs. 39-47, 49-52, 53. The Court finds that trial counsel's litigation of this matter was thorough and that petitioner has failed to show that it meets the Strickland standard for ineffective assistance. The fact that the trial court rejected counsel's argument is not any indication that counsel's performance was deficient. Flieger v. Delo, at 886.

N. Failure to respond adequately to the State's argument that petitioner planned the robbery and murders
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, supra; Foster v. Delo, at 880; Byrd v. Delo, supra.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.

O. Failure to object to the prosecutor's remarks regarding the petitioner's failure to testify
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of *812 same; consequently, it is procedurally barred. Foster v. Delo, at 880. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, supra; Foster v. Delo, at 880; Byrd v. Delo, supra.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.
Furthermore, the trial record does not indicate any remark made by the prosecutor regarding the petitioner's failure to testify. It appears that this claim is directed not at the prosecutor's remarks (or lack thereof) regarding petitioner's failure to testify, but rather to the prosecutor's questioning of the State's witness Roland Johnson which elicited a response referencing the petitioner's post-arrest silence.
The court record indicates that the prosecutor asked Johnson why Johnson did not make a statement the first time he talked to the police. Johnson replied, "[t]he reason I didn't make a statement the first time I felt as though Schneider or Morgan would go ahead and tell their side of the story." Trial Transcript, pg. 1361. It is clear that the prosecutor's question was directed solely at Johnson's motivation for keeping silent, not at petitioner's post-arrest silence. Petitioner hasn't demonstrated any knowledge on the part of the prosecutor that he knew that Johnson would respond to the question by referencing Schneider's post-arrest silence. Petitioner hasn't demonstrated why trial counsel should have objected to the question since it did not in anyway implicate petitioner's post-arrest silence. Such an objection would have been overruled. Trial counsel's performance was not deficient under the Strickland standard.

P. Failure to object to the trial court allowing the jurors unrestricted access to television
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.

Q. Failure to poll the jury after rendering a guilty decision
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.

R. Failure to depose the State's witnesses Kenny and Beverly LaVear to determine if a conflict of interest existed
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally *813 barred. Foster v. Delo, at 880. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, supra; Foster v. Delo, at 880; Byrd v. Delo, supra.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.
Furthermore, the Court has carefully reviewed the trial record in this case and finds that trial counsel's performance was not ineffective given the circumstances. On the third day of trial, witness Pat Woodside suddenly informed the State that her testimony had been incorrect in that when she visited petitioner a second time at his residence, she took along her brother-in-law Kenny LaVear, not her boyfriend as she had previously testified. She further informed the State that Kenny LaVear had purchased a microwave from petitioner (one of several items stolen from the murder victims' home). Neither Kenny nor Beverly LaVear had ever been identified as having any connection to the case. As soon as the State knew about the LaVears, prosecutors told petitioner's counsel. Counsel's preliminary investigation revealed that one or both of the LaVears may have been represented at one time or another by the Jefferson County Public Defenders' Office. Counsel was given about forty-eight (48) hours to talk to the LaVears and to do a background check. Counsel talked to the LaVears by telephone. A background check indicated that Kenny LaVear had been represented in 1977 and 1980 on misdemeanor trespassing charges by the Jefferson County Public Defenders' Office (neither of petitioner's trial counsel had been employed by the Jefferson County Public Defenders' Office at these times). Beverly LaVear was represented by the Jefferson County Public Defenders' Office from October 1994 until shortly before trial began in the petitioner's case. Trial counsel argued extensively that the State be prohibited from endorsing either one of the LaVears as witnesses, or in the alternative, that a continuance be ordered so that counsel could more thoroughly investigate the LaVears' background and their alleged involvement in the case. The trial court rejected both arguments, specifically finding that no conflict existed because 1) Beverly LaVear was not being called as a witness; and 2) Kenny LaVear had been represented by other public defenders long before either one of petitioner's counsel had joined the Jefferson County Public Defenders' Office; 3) Kenny LaVear's trespassing convictions were of public record and any investigation notes (confidential discussions, etc.) pertaining to these convictions were totally irrelevant to the petitioner's case and would not place counsel at an advantage because of the earlier representations by the Public Defenders' Office; and 4) Kenny LaVear's testimony was secondary, i.e. was corroborative and cumulative of Pat Woodside's testimony. Trial transcript, pgs. 953-966, 1598-1613.
An actual conflict of interest may constitute the cause and prejudice necessary to overcome a procedural bar. Nave v. Delo, 22 F.3d 802, 811 (8th Cir.1994). The petitioner must show that "an actual conflict of interest adversely affected his lawyer's performance." Nave v. Delo, at 811 citing Salam v. Lockhart, 874 F.2d 525, 527 (8th Cir. 1989) [quoting Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980)]. "Neither a possible conflict nor the appearance of impropriety are sufficient to demonstrate the existence of an actual conflict; the claimant must show that `his counsel actively represented conflicting interests.'" Nave v. Delo, at 811 (citations omitted). Petitioner has failed to present any facts which might demonstrate that an actual conflict of interest existed. He relies solely on the minimal relationship that the Jefferson County Public Defenders' Office had with a State witness, on totally unrelated charges *814 several years earlier, to contend that a possible conflict of interest existed. He further speculates that this possible conflict prevented his counsel from deposing the LaVears. The trial record belies this supposition; both the State and trial counsel were surprised during trial with the LaVears' existence, trial counsel tried to get the trial court to refuse to allow the State to endorse the LaVears as witnesses, trial counsel tried to get a continuance, the trial court rejected both options, and despite the extremely short amount of time to gather information on the LaVears, trial counsel did speak with them and resurrected old files stored by the Public Defenders' Office to review. The Court concurs with the trial court's findings that an actual conflict of interest did not exist due to the minimal representation by other counsel on totally unrelated charges a number of years earlier; and that Kenny LaVear's testimony would not necessitate any cross-examination regarding confidential matters pertaining to his representation by the Jefferson County Public Defenders' Office. Consequently, petitioner has failed to establish cause to overcome the procedural bar.

S. Failure to adequately cross-exam Kenny LaVear
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.
Furthermore, the trial record indicates that trial counsel's "limited" cross-examination of Kenny LaVear was not due to any possible conflict of interest, but rather due to the short notice given by the State that it intended to call Mr. LaVear as a witness. Petitioner fails to identify what other questioning his counsel should have engaged in with regard to Mr. LaVear. The trial record shows that trial counsel thoroughly examined Mr. LaVear as to his connection with the stolen merchandise, and his relationship to Pat Woodside. Trial Transcript, pgs. 1678-1684. Finally, petitioner fails to demonstrate but for trial counsel's failure to ask (unidentified) questions he would not have been found guilty or sentenced to death. The Court finds no basis for excusing the procedural default.

T. Failure to object to evidence of petitioner's prior convictions as an aggravating circumstance during the penalty phase of the trial because these prior convictions were invalid i.e. petitioner claims that his counsel in these earlier criminal proceedings rendered ineffective assistance, thus his prior convictions are unconstitutional
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.
This claim is meritless. Petitioner does not attack the fact that these prior convictions exist or that the State was well within its right to present them as an aggravating circumstance under Missouri law. Instead, he is using this federal habeas proceeding to collaterally attack the merits of the prior convictions. As far as this Court can ascertain, petitioner never challenged *815 these convictions in post-conviction proceedings at the time of these earlier convictions. If petitioner is procedurally barred from raising claims pertaining to the instant conviction and sentence because he failed to raise them in the state courts, he most certainly is procedurally barred from raising an ineffective assistance claim pertaining to another counsel's performance in another trial which was never raised to the state courts during that trial's post-conviction proceedings. As for trial counsel's failure to object to the prior convictions because of the alleged deficient performance of other trial counsel in other cases, the Court agrees with the State that counsel would have been rebuked (probably severely) by the trial court for attempting to challenge the constitutionality of those convictions. This Court finds trial counsel's restraint quite reasonable under the circumstances.

U. Failure to investigate and present mitigating evidence at penalty phase of trial regarding petitioner's social history and background, hyperactivity, substance abuse, psychiatric problems, rehabilitation potential, educational deficiencies, employment history, and capacity for the arts
The State contends that this claim is procedurally defaulted because it was not presented to the 29.15 motion court or on appeal of the denial of the 29.15 motion. The State avers that this claim is not the same claim which was raised before the 29.15 motion court and on appeal of the denial of the motion, i.e. that claim was for failure to secure a mental exam because trial counsel was allegedly "put on notice" that plaintiff was hyperactive, a substance abuser, a deficient education, etc. Petitioner argues that this claim is not procedurally defaulted because "although not artfully stated" it was preserved by petitioner's 29.15 motion and the appeal therefrom.
The Court has reviewed the 29.15 motion court's order denying the motion, State's Exhibit J  Legal File, Motion Court's Findings of Fact and Conclusions of Law (re Amended 29.15 Motion), pgs. 7-8 (pgs. 19-20 of the exhibit); as well as the Missouri Supreme Court's opinion regarding the appeal of the denial of the post-conviction motion, Schneider v. State, 787 S.W.2d 718 (Mo.1990). Although the Court agrees that this claim was "inartfully stated" in the amended 29.15 motion, it is evident that both the motion court and the Missouri Supreme Court did address the basic issue raised in the claim. "A federal court may consider the merits of a claim made in a habeas corpus petition if the petitioner has fairly presented to the state courts the substance of his claim." Guinan v. Armontrout, 909 F.2d 1224, 1227 (8th Cir.1990). The Court finds that this claim is not procedurally defaulted. See, Hill v. Lockhart, 28 F.3d 832, 834-35 (8th Cir.1994) (citations omitted).
This Court has already reviewed a large part of the essence of this claim in Subsection B of this opinion. It will only reiterate that given the information at the time, and trial counsel's review of the petitioner's demeanor and criminal background, trial counsel's decision not to pursue a psychiatric examination was reasonable trial strategy. This Court's review of the trial record supports the motion court's findings that petitioner did not offer any evidence which would have put his mental state at issue. Petitioner's past psychiatric history was for the most part unremarkable. Dr. Daniel's testimony revealed only that petitioner had normal intelligence, had understood the criminal charges brought against him, had understood the risk of the imposition of the death penalty, and although had no remorse for the murders because he was denying any involvement in them, he was capable of remorse. State's Exhibit I. After reviewing the evidence actually available at the time of trial, trial counsel's testimony regarding his reasons for not further exploring the need for an independent psychological evaluation, and even reviewing the evidence petitioner argues should have been presented[8], this Court does not agree that in *816 all probability the jury would have been persuaded differently by the type of psychiatric evidence the petitioner feels should have been offered. See, Murray v. Delo, 34 F.3d 1367, 1380-81 (8th Cir.1994). Petitioner fails to demonstrate prejudice pursuant to Strickland. Compare, Hill v. Lockhart, supra.
Finally, as to the rest of the claim, the Court finds that trial counsel's performance was not ineffective under the Strickland standard. Missouri courts have consistently held that counsel has no absolute duty to present mitigating character evidence at the penalty phase of a trial, even in a death penalty case, and that the choice of witnesses is a question of trial strategy. Schneider v. State, supra; Jones v. State, 767 S.W.2d 41 (Mo.1989); Bolder v. State, 712 S.W.2d 692 (Mo.App.1986); Newlon v. State, 705 S.W.2d 590, 594-95 (Mo.App.1986). However, counsel does have a duty to exercise reasonable diligence to investigate possible mitigating evidence in order to make an informed strategic decision as to whether or not to utilize such evidence. Counsel may be found to have rendered ineffective assistance if s/he fails to investigate or investigates inadequately. Battle v. Delo, at 1555, n. 4; Chambers v. Armontrout, 907 F.2d 825, 828-31 (1990).
The motion court found that trial counsel had interviewed various family members and found their proposed testimony questionable and not particularly supportive. He was also concerned about their hostile attitude regarding the conviction. Trial counsel decided to have only the petitioner's mother testify as to petitioner's artistic abilities, employment history, social history, educational deficits, alleged substance abuse, and general background. Schneider v. State, 787 S.W.2d at 721; Trial Transcript, pgs. 1933-41. Consequently, petitioner was not prejudiced by trial counsel's performance because all the information petitioner claims trial counsel failed to present was presented through petitioner's mother's testimony.

V. Failure to request funds for expert services, including those of a mental health expert
The State contends that this ground is procedurally defaulted because it was not raised in petitioner's amended 29.15 motion or in the appeal of the denial of the motion. Petitioner contends that this ground is not procedurally defaulted because it was raised in the context of his claim of ineffective assistance of counsel for failure to secure a mental examination.
The Court has carefully reviewed the petitioner's amended 29.15 motion, the findings of the motion court, and the findings of the Missouri Supreme Court on the appeal of the denial of the motion. It is clear that this ground was never presented to the motion court or to the Missouri Supreme Court. Nowhere in their findings is there any reference to trial counsel's alleged deficient performance for failing to secure funds for expert services, mental health or otherwise. Furthermore, to the extent this claim is related to trial counsel's failure to secure a psychological examination, it is redundant. This ground is procedurally barred.

W, X, Y, Z, AA, BB, CC, DD, and EE. Failure to call Edward Schneider, Jr., Tina Marie Hockenberry, Gary Hockenberry, Media Schneider, Edward Schneider, Sr., Darlene Hedricks, Media Hendricks, Victoria Bradshaw, and Darlene Hockenberry (all family members) as witnesses during penalty phase of trial
This issue was raised both in the petitioner's amended 29.15 motion, and in his appeal of denial of the motion; consequently, it is not procedurally barred.
Trial counsel testified at the 29.15 motion hearings that after consulting with the family members he found them to be hostile toward *817 the jurors for finding the petitioner guilty, and their "character testimony" not particularly meaningful and somewhat repetitive. He was also greatly concerned about their intent to tell the jury about co-defendant David Morgan's plea agreement, which the trial court had already ruled inadmissable. As a matter of trial strategy, he decided to have only petitioner's mother testify regarding the petitioner's childhood, his problems growing up, his education, and his artistic abilities. State's Exhibit H  Transcript of the 29.15 Motion Hearing, pgs. 34-41, 48-49, 53-54, 76-79. The motion court, after hearing the named family members testify, found that "[t]he family members that testified in this proceeding were weak and offered little. What they offered in terms of intra family interaction does not really tell us anything of substance and could be found in good, bad, or indifferent family members." State's Exhibit J  Motion Court's Findings of Fact and Conclusions of Law, pg. 8 (Exhibit pg. 20). The Missouri Supreme Court reviewed the motion court's hearing transcript and the motion court's findings. It found that under Missouri law, counsel did not have any absolute duty to present mitigating evidence at the penalty phase of a trial, even in a capital murder case. It found that Missouri law only required counsel to make a reasonable investigation of possible mitigating evidence before making strategic choices. It found that if an attorney believes that testimony would not unequivocably assist his/her client, then it is a matter of trial strategy not to call that witness to testify. Based upon its factual findings and application of Missouri law, the Missouri Supreme Court determined that trial counsel was not ineffective and petitioner had not been prejudiced by trial counsel's decision to call only petitioner's mother to testify regarding petitioner's character and background. Schneider v. State, 787 S.W.2d at 721.
This Court has reviewed the trial record, the transcript of the 29.15 motion hearings, the motion court's ruling on the 29.15 motion, and the Missouri Supreme Court's ruling on appeal of the denial of the 29.15 motion. Trial counsel made a reasonable investigation into the family members' attitudes and proposed testimony and determined that their demeanor, attitude, and proposed testimony was not going to be beneficial to petitioner. He determined, that as a matter of trial strategy, he needed to present some type of "positive" character evidence and that petitioner's mother would be most knowledgable about petitioner's childhood and best able to present character evidence in a favorable manner. This decision is consistent with the Strickland standard in that strategic decisions "made after thorough investigation of law and facts ... are virtually unchallengable," even if such decisions prove later to have been unsuccessful. Battle v. Delo, at 1555-56 citing Strickland v. Washington, 466 U.S. at 690, 104 S.Ct. at 2065-66. Trial counsel's decision not to call these named family members was reasonable at the time, and did not amount to ineffective assistance of counsel.

FF. Failure to present mental health testimony at penalty phase of trial
The State contends that this issue was not the same issue as raised in petitioner's amended 29.15 motion and in the appeal of the denial of the motion. As stated before, although the claim before both the motion court and the Missouri Supreme Court was stated in terms of trial counsel's failure to secure a mental examination, it appears to this Court that both state courts addressed the issue a bit more broadly. Consequently, this Court finds that the instant ground is not procedurally defaulted.
The Court incorporates its findings under Subsection U. and simply reiterates that this Court's independent review of the trial record and post-conviction motion hearing record supports the state courts' findings regarding the absence of mental health evidence at the penalty phase of petitioner's trial. Petitioner's mental health status was never an issue in the case. His defense was one of not being involved in the murders but simply only attempting to "fence" the murder victims' stolen items. A recent 522 mental examination showed no evidence of any mental disease or defect. At petitioner's motion hearing, trial counsel testified that petitioner was always coherent, understandable, and understood the charges against him. See, *818 Schneider v. State, 787 S.W.2d at 720. The only evidence of petitioner's hyperactivity is his mother's vague recollection that over twenty (20) years earlier (prior to the murders) petitioner had been prescribed Ritalin by an unknown physician. Petitioner has presented no medical records to substantiate a medical diagnosis of hyperactivity. Dr. Daniel's testimony at the motion hearing clearly shows, that in formulating his opinion, he accepted this undocumented and unsubstantiated childhood medical diagnosis as being correct. State's Exhibit I, pgs. 8-10, 23, 25-26. He then postulated that petitioner's life from that point on was dictated by his "hyperactivity". He further connected petitioner's history of drug abuse and involvement with street gangs to this "diagnosis". However, no where in his testimony does he state that based upon his own examinations of the petitioner, this "diagnosis" is correct. Instead he testifies, that based on his own examinations, petitioner possesses normal intelligence; was not disoriented as to time and place; has normal speech, comprehension, abstract thinking, and reasoning abilities; and no formal thought disorder. State's Exhibit I, pgs. 19-22. Essentially, Dr. Daniel's motion hearing testimony supports trial counsel's motion hearing testimony that there was no indication that petitioner's mental health status was an issue upon which testimony should have been presented.
There simply is no well-documented and credible evidence of any mental illness history which trial counsel should have presented to the jury at the penalty phase of the trial. Petitioner's own self-history, at the time of his trial, was that he had stopped abusing drugs some years before and had received treatment. He possesses normal intelligence, normal abilities regarding abstract thinking and comprehension, normal orientation as to time and place, and suffers from no formal thought disorder. He was able to understand the charges brought against him and to participate in his defense. This Court finds that trial counsel's decision not to present mental health testimony was within the range of "professionally competent assistance". Strickland v. Washington, 466 U.S. at 690, 104 S.Ct. at 2065-66; see also, Murray v. Delo, at 1380-81; Bannister v. Armontrout, 4 F.3d 1434, 1441-43 (8th Cir. 1993).

GG. Failure to object to the instruction on statutory mitigating evidence
In his traverse to the State's response to the petitioner's first amended petition for writ of habeas corpus, petitioner modifies this ineffective assistance ground as follows: "Although the issue is not clearly presented, Petitioner asserts his trial counsel was ineffective for submitting the instruction on mitigation as well as for not objecting to it." Petitioner's Traverse, pg. 28. The Court is unclear as to why or how trial counsel was to object to an instruction that counsel himself requested. No matter what petitioner is attempting to plead, it is clear that any ineffective assistance claim regarding trial counsel's submission of the mitigating instruction is procedurally defaulted. Petitioner failed to raise such a claim in his amended 29.15 motion or in his appeal of the denial of same. See, Schneider v. State, 787 S.W.2d at 721.
However, petitioner's ineffective assistance claim regarding trial counsel's failure to object to the mitigating instruction is not procedurally barred. The Missouri Supreme Court found the instruction[9] was constitutional. Schneider v. State, 787 S.W.2d at 721 citing Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Roberts v. State, 775 S.W.2d 92, 96 (Mo.1989).
The Eighth Circuit has consistently held that Missouri's mitigating circumstances instruction is constitutional. Murray v. Delo, at 1381; Nave v. Delo, at 815; Battle v. Delo, at 1562. Petitioner has failed to make any showing that the jury misconstrued the instruction rendering the sentencing decision invalid. See, Battle v. Delo, at 1562. Furthermore, the Eighth Circuit has held that *819 counsel's failure to raise a Mills v. Maryland challenge to the instruction on mitigating circumstances is not ineffective assistance of counsel. Nave v. Delo, at 815; Grubbs v. Delo, 948 F.2d 1459, 1471 (8th Cir.1991). This ground for ineffective assistance of trial counsel is meritless.

HH. Failure to object to an invalid aggravating circumstances instruction which did not properly define and limit the aggravating circumstances
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.

II. Failure to argue to the trial court that it need not impose the death sentence as recommended by the jury
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, supra; Foster v. Delo, at 880; Byrd v. Delo, supra.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.

JJ. Failure of trial counsel to take adequate time interviewing the petitioner in order to "learn about him"
Petitioner failed to raise this claim in his 29.15 motion or in his appeal of denial of same; consequently, it is procedurally barred. Foster v. Delo, at 880.
Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 counsel was ineffective for failing to raise this claim before the motion court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of his 29.15 counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.
As a final assertion, petitioner states that all of his grounds for ineffective assistance of trial counsel, when taken together, clearly demonstrate that a "fundamental miscarriage of justice" occurred at his trial.
As to petitioner's procedurally barred ineffective assistance of trial counsel claims, he could still present such claims to this Court, even after failing to establish "cause and prejudice", if these claims fit within the "narrow scope of the fundamental miscarriage of justice exception". Schlup v. Delo, supra; Sawyer v. Whitley, ___ U.S. ___, ___, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992). This narrow exception to a procedural bar is tied to the petitioner's innocence and is specifically "concerned with actual as compared to legal innocence." Jolly v. Gammon, at 54 quoting Sawyer v. Whitley, ___ U.S. at ___, 112 S.Ct. at 2519. A petitioner may obtain review of his/her procedurally barred claims, despite failing to establish "cause and prejudice", if s/he can *820 demonstrate to the federal court that s/he is either "actually innocent" of the commission of the crime for which s/he has been convicted, or "actually innocent" of the death penalty. The standards of proof differ depending upon which assertion of actual innocence the petitioner is making.
If the petitioner asserts an injustice due to erroneous conviction, then "[t]he Carrier standard requires the habeas petitioner to show that `a constitutional violation has probably resulted in the conviction of one who is actually innocent'... [t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, ___ U.S. at ___, 115 S.Ct. at 867 quoting Murray v. Carrier, 477 U.S. at 496, 106 S.Ct. at 2649-50. Specifically, petitioner must show that no reasonable juror would have found him guilty beyond a reasonable doubt. Schlup, ___ U.S. at ___, 115 S.Ct. at 867. However, if petitioner asserts an injustice due to erroneous sentencing, then petitioner has the burden to "show by clear and convincing evidence that but for a constitutional error, no reasonable juror" would have found the petitioner eligible for the death penalty under state law. Sawyer v. Whitley, ___ U.S. at ___, 112 S.Ct. at 2523; Murray v. Delo, at 1381; Nave v. Delo, at 810; Battle v. Delo, at 1554; McCoy v. Lockhart, 969 F.2d 649, 651 (8th Cir.1992).
Schneider's assertion of a "fundamental miscarriage of justice" is extremely vague. He fails to distinguish whether such an injustice would occur because trial counsel's alleged deficient performance resulted in his conviction for a crime he did not commit; or whether trial counsel's alleged ineffective assistance resulted in him receiving a death sentence for which he was not eligible. Given the vagueness of petitioner's assertion, the Court's analysis incorporates both the Carrier and Sawyer standards.
After reviewing the evidence actually adduced at trial, as well as the evidence Schneider alleges should have been included, this Court finds that petitioner has failed to demonstrate that any reasonable juror would not have convicted him of the capital murders or would have recommended a life sentence instead of the death penalty. He has not provided the Court with any new evidence that his conviction was the probable result of his trial counsel's alleged deficient performance. Although the Court has rejected the petitioner's attempt to formally expand the factual record, it has reviewed the affidavits and prison file documents submitted in the context of this analysis and determines that they do not constitute clear and convincing evidence that but for trial counsel's alleged ineffective assistance, no reasonable juror would have found petitioner eligible for the death penalty.
Finally, this Court also rejects petitioner's assertion that the alleged instances of trial counsel's deficient performance cumulatively establish a general claim of ineffective assistance of trial counsel. This Court's review of the entire trial record indicates that Schneider's trial counsel was diligent, competent, and extremely conscientious in his representation of petitioner.

IV. Petitioner was denied his right to individual sentencing due to the impermissible admission of victims' impact testimony
This claim was not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590; Foster v. Delo, 39 F.3d 873, 880 (8th Cir.1994); Byrd v. Delo, supra.
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; *821 Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra. Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.

V. Defendant was denied his due process equal protection rights because no mental health expert examined him prior to trial
This claim was not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Nave v. Delo, 22 F.3d 802, 808 (8th Cir.1994) citing Smith v. Groose, 998 F.2d 1439, 1441 (8th Cir.1993) ("The failure to satisfy state procedural requirements serves as an adequate and independent state procedural bar to review.").
Petitioner attempts to overcome the procedural bar by establishing "cause" in that his trial counsel was ineffective for "deciding not to at least investigate mental health issues and thus precluding their presentation at trial in either the guilt or punishment phases." Petitioner's Traverse, pg. 31.
Establishing cause for a procedural default "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Parkus v. Delo, 33 F.3d 933, 938 (8th Cir.1994) quoting Murray v. Carrier, 477 U.S. at 488, 106 S.Ct. at 2645-46. "A petitioner may demonstrate an objective impediment to compliance with a procedural rule by showing that the `factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable.'" Parkus v. Delo, at 938 quoting Murray v. Carrier, 477 U.S. at 488, 106 S.Ct. at 2645.
Petitioner's "cause" is only that trial counsel decided not to investigate mental health issues. Petitioner fails to demonstrate or even allege that any external factor or interference by officials somehow prevented counsel from including this claim in his motion for a new trial or on direct appeal. Petitioner has failed to establish cause for his procedural default.

VI. Missouri's statutory aggravating circumstances instruction which includes that the murder(s) must have involved "torture or depravity of mind" violates the Eighth and Fourteenth Amendments
This claim was not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590; Foster v. Delo, 39 F.3d 873, 880 (8th Cir.1994); Byrd v. Delo, supra.
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra. Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.
Furthermore, even if this claim were not procedurally barred, it still fails to require habeas relief. Although the Missouri Supreme Court did not address the heinous nature of these murders in the context of this claim, it did review the facts surrounding the murders and the conduct of the petitioner during the commission of the murders in its statutorily mandated review of the imposition of the death penalty. State v. Schneider, 736 S.W.2d 392, 404. The Court found that:
"The defendant and his coconspirators planned to burglarize and rob the home of the victims. They went armed with deadly weapons, including a sawed-off rifle, a sawed-off shotgun and a double edged knife. After Morgan kicked in the door to the home the victims were assaulted and bound with, among other things, Christmas *822 lights, and a dog chain was placed around the neck of victim Schwendemann. Thompson was initially stabbed in the neck and left to bleed to death. Somehow he managed to stagger outside, only to be recaptured and subjected to multiple stabbings in the chest, back, neck, neck and throat, sustaining at least 15 stab wounds. Schwendemann was shot in the back, which apparently paralyzed him but left him conscious, and later shot in the head. The fatal stabbings, slashing and shootings were accompanied with the additional brutality of `stomping' and kicking Schwendemann so severely that two of his ribs were broken. The preplanned burglary was methodically carried out and a considerable quantity of `loot', consisting of the personal property of the victims, was taken and divided among the participants in the crime. Not only is there no showing of remorse on the part of this defendant, but to the contrary he demonstrated an offensive air of braggadocio when boasting to others how he brought about the deaths of the victims."
Id., at 404. The Court further found this evidence supported the jury's finding that the murders involved the torture and depravity of mind and as a result thereof were outrageously or wantonly vile, horrible, or inhuman. Id., at 404.
The findings by the state court are accorded a presumption of correctness. This Court's independent review of the trial record supports the Missouri Supreme Court's findings. Given these findings, this Court believes the jury could have found that the victims were subjected to physical and mental abuse constituting torture and that defendant's actions were inhuman. Furthermore, similar instructions have been found to be constitutional. See, Murray v. Delo, at 1382-83; Battle v. Delo, at 1562-63.

VII. Petitioner's death sentence was based on invalid prior convictions (petitioner claims his prior convictions were the result of ineffective assistance of those trial counsel)
This claim was not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Nave v. Delo, 22 F.3d 802, 808 (8th Cir.1994) citing Smith v. Groose, 998 F.2d 1439, 1441 (8th Cir.1993) ("The failure to satisfy state procedural requirements serves as an adequate and independent state procedural bar to review.").
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra, Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.
Petitioner concedes that he has never challenged his prior convictions through the state appellate or habeas process; or through the federal habeas process. Petitioner is not presently in custody for his prior convictions. Even if this claim were not procedurally barred, petitioner cannot collaterally attack the constitutionality of these prior convictions in this federal habeas proceeding because he is not "in custody" for these earlier convictions. 28 U.S.C. § 2254 requires a habeas prisoner to be "in custody" under the conviction or sentence under attack at the time his petition is filed. Maleng v. Cook, 490 U.S. 488, 490, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989). Even if the prior conviction is used to enhance any sentences imposed on subsequent criminal convictions, the habeas prisoner is still "in custody" pursuant to the presently enhanced sentence, not the prior convictions. Maleng v. Cook, 490 U.S. at 492-93, 109 S.Ct. at 1926.

VIII. The State withheld materially exculpatory evidence and introduced false and misleading evidence because it knew that David Morgan had made statements that Charles Palmer had planned the robbery and killed Thompson
This claim was not raised in a motion for new trial or on direct appeal; consequently, *823 it is procedurally defaulted. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590; Foster v. Delo, 39 F.3d 873, 880 (8th Cir.1994); Byrd v. Delo, supra.
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra. Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.
Furthermore, the trial record shows that no Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) violation occurred. Petitioner contends that co-defendant Morgan identified co-defendant Palmer as the one who stabbed victim Thompson in the neck and that the State failed to disclose this information to the jury. Firstly, under Brady the State has a duty to disclose exculpatory evidence to the defendant, not to the jury. Secondly, Morgan's statement incriminating Palmer was made during his deposition, which was being taken by petitioner's trial counsel. State's Exhibit D, pgs. 53-54. Consequently, petitioner's counsel and the State simultaneously received this information through Morgan's deposition. Finally, both the State and petitioner's trial counsel listed co-defendant Morgan as a witness. Neither side called Morgan to testify; thus, Morgan's deposition testimony would have been inadmissible hearsay. There is no need of further discovery on this matter.

IX. The trial court erred in admitting petitioner's statements into evidence because they were obtained in violation of petitioner's Fifth Amendment rights
This claim was not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590; Foster v. Delo, 39 F.3d 873, 880 (8th Cir.1994); Byrd v. Delo, supra.
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra. Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.
Furthermore, this issue was raised by petitioner's trial counsel in his motion to suppress. The trial court conducted an evidentiary hearing on the matter and denied the motion. The evidence at the motion to suppress hearing included testimony from the three police officers involved in petitioner's arrest. The evidence at the suppression hearing was as follows:
A burglary had occurred on or about January 7, 1985. Witnesses described a suspect vehicle as either an Oldsmobile or Chevrolet, 1975 or 1976 make, light blue with the left rear window broken out and replaced by plastic which was secured by duct tape. On the morning of January 13, 1985 Officer Nick Wild was patrolling Interstate 55 when he spotted a vehicle on the shoulder which matched the description of the car used in *824 the January 7th robbery. State's Exhibit A  Trial Transcript, pgs. 140-41. Three men were standing outside of the car to the rear of it; one of the men (later identified as Schneider) was changing a flat tire on the rear passenger side. Trial Transcript, pg. 141. As Officer Wild pulled up behind the vehicle, he radioed Officer George Basler. Trial Transcript, pg. 142. Officer Wild stopped his car, got out, and approached the three men. He stated to the men that they ought to be careful and that he would stay with them until Schneider finished changing the tire. Trial Transcript, pg. 142. Meanwhile, Officer Wild believed that one of the men, later identified as David Morgan, matched a composite drawing of one of the men involved in the January 7th robbery. He saw that the passenger front door was open. Officer Wild walked around the side of the car and looked inside the open passenger door. Trial Transcript, pgs. 144, 156-161. He testified that since the car matched the description of the car involved in the January 7th robbery, and Morgan matched the composite drawing of one of the men involved in that robbery, he was concerned about the men having ready access to a weapon in the car. Trial Transcript, pg. 144, 158-159. As he walked up to the opened car door, he was followed by Morgan. Trial Transcript, pgs. 144-45, 157-58. When Officer Wild looked inside of the car, he spotted a brown box on the front seat partially hidden underneath the armrest. Trial Transcript, pgs. 144, 158. As he looked in, Morgan reached in from behind and shoved the box towards the driver's side of the seat. Trial Transcript, pgs. 144-45, 157-160. Officer Wild grabbed Morgan by the belt and told him to return to the rear of the car and stand. Trial Transcript, pgs. 145, 160-61. They returned to the back of the car and engaged in some idle chitchat about the tire. Trial Transcript, pgs. 160-61. Officer Wild testified that he then took Morgan back to his patrol car where he informed Morgan that he suspected Morgan of being involved in the January 7th robbery. Trial Transcript, pgs. 143, 161. Officer Wild further testified that just about then Officer Basler pulled up. Officer Wild and Officer Basler conferred about Morgan matching the composite drawing and Officer Wild told Officer Basler about the brown box and Morgan's actions with regard to the box. Trial Transcript, pgs. 145-46, 163. The two officers walked back up to the suspect vehicle, Officer Basler sat down on the corner of the front seat, and took the lid off of the brown box. Trial Transcript, pgs. 163-65, 167. Upon the removal of the lid, Schneider stated that the jewelry contained in the box belonged to his family, that he lived in a bad neighborhood, and that was why he carried it in the car. Trial Transcript, pgs. 161, 165. Shortly thereafter, a third patrol car arrived with Officer Joe McMahon and all three men were placed under arrest. Trial Transcript, pg. 149.
Officer Basler testified that upon arriving on the scene, he first talked with Officer Wild, then approached the suspect car and looked inside. Trial Transcript, pgs. 178, 182. He spotted the brown box on the front seat. Trial Transcript, pg. 178. He sat down on the corner of the seat, opened up the box, and found jewelry inside. Trial Transcript, pgs. 179, 183. While this was going on, Schneider was still at the rear of the car, changing the flat tire. Trial Transcript, pg. 183. Officer Basler replaced the lid and started back with the box towards Officer Wild's car. Trial Transcript, pg. 184. Schneider came around to the side of the car, saw Officer Basler with the brown box, and stated that the box contained his family's jewelry, that he lived in a bad neighborhood, and that was why the box was in the car. Trial Transcript, pgs. 179, 184.
Officer Joe McMahon was the third officer to arrive at the scene. Trial Transcript, pg. 170. He testified that upon arriving, the three suspects (Schneider, Morgan, and a man later identified as Roland Johnson) were sitting in the suspect vehicle. He talked with Officer Wild and they compared the composite drawing with Morgan's driver's license picture. Trial Transcript, pg. 170. Officers Wild and McMahon then went up to the suspect car and asked Morgan to get out of the car. All three men walked back to Officer Wild's car. Trial Transcript, pg. 171. Morgan was informed of the officers' suspicions about his involvement in the January *825 7th robbery which he first denied knowing anything about. Trial Transcript, pg. 171. Morgan then admitted to his involvement in the January 7th robbery, as well as to the murders of Thompson and Schwendemann. Trial Transcript, pgs. 174-176. The other two men were removed from the car, and all three were placed under arrest. Trial Transcript, pgs. 173-76.
Schneider alleges that he was "in custody" when Officer Basler removed the lid from the box and that his statements were made before he was Mirandized. This Court has conducted an independent review of the hearing evidence and concludes that petitioner's statements regarding the contents of the brown box were uttered prior to being taken into custody and placed under arrest. Such statements were voluntary in nature, and made prior to the need of Miranda rights being read to the petitioner.
Police officers are required to issue Miranda warnings only prior to custodial interrogation. United States v. Wright, 971 F.2d 176, 180 (8th Cir.1992); United States v. Caldwell, 954 F.2d 496 (8th Cir.1992); United States v. Lyon, 949 F.2d 240, 243 (8th Cir.1991). Any voluntary statements made by a suspect, not in response to express questioning or interrogation tactics, is not barred by the Fifth Amendment and is admissible with or without Miranda warnings. United States v. Lawrence, 952 F.2d 1034, 1036 (8th Cir.1992); United States v. Griffin, 922 F.2d 1343 (8th Cir.1990).
Petitioner contends that his statements concerning the contents of the brown (jewelry) box were made while he was "in custody" and without the benefit of Miranda warnings. He offers no factual support for this general allegation. The trial record, however, establishes that at the time of his statements, petitioner was not "in custody" and his statements were not in response to any questioning by any one of the police officers at the scene.
A custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom in any significant way. Miranda v. State, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694; (1966) see, Jenner v. Smith, 982 F.2d 329, 334 (8th Cir.1993). However, Miranda warnings are not required merely because the individual questioned by law enforcement officers is a suspect or is the focus of a criminal investigation. Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 713-14, 50 L.Ed.2d 714 (1977); Jenner v. Smith, at 334-35. In United States v. Griffin, the Eighth Circuit Court of Appeals set forth the standard by which this Court should examine the issue of custodial interrogation. This Court is to examine the totality of the circumstances in determining whether the petitioner was "in custody" when the statements in question were made. Id., at 1347. The Court further enumerated six common indicia of custody to assist courts in this examination. This list of common indicia of custody includes: 1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; 2) whether the suspect possessed unrestrained freedom of movement during the questioning; 3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; 4) whether strong arm tactics or deceptive stratagems were employed during questioning; 5) whether the atmosphere of the questioning was police dominated; or, 6) whether the suspect was placed under arrest at the termination of the questioning. Id., at 1349.
Petitioner offers nothing to dispute the testimony adduced at his trial that up until he made his statements, he was busy changing a flat tire on the car and that the only conversation he had had with Officer Wild had been general conversation regarding the tire. At the time that he made his statements concerning the contents of the jewelry box, neither Officer Wild nor Officer Basler had directed any questions to him. He offers nothing to dispute the testimony that even after he made his statements, no questions were directed to him regarding the box. The trial record indicates that at the time of petitioner's statements, the only man considered to be a suspect (in the January 7th robbery) was David Morgan. The officers *826 testified that their conversations regarding their suspicions about David Morgan were not made in close proximity to petitioner, nor were their suspicions conveyed to the petitioner. There is no evidence that the police officers used "strong-arm tactics" in order to elicit petitioner's statements. Finally, petitioner was not placed under arrest until sometime after the statements were made and Morgan made statements to the police officers implicating petitioner in certain criminal activities. Given the fact that petitioner was not under arrest, was not under any type of physical restraint, was not given any verbal directive by Officers Wild or Basler that he could not leave the scene, and most importantly, was not being questioned by either one of the officers, the Court finds that petitioner was in a non-custodial situation when he spontaneously made his statements concerning the contents of the jewelry box. Jenner v. Smith, at 335; United States v. Griffin, at 1349-52. Consequently, petitioner's Fifth Amendment rights were not violated by the absence of Miranda warnings, and the state trial court properly denied his motion to suppress.

X. Prosecutorial misconduct by the state prosecutor in his closing argument during both phases of trial
Petitioner claims that the state prosecutor improperly argued during his closing arguments 1) that the petitioner personally stabbed victim Thompson; 2) that he had personal knowledge of facts outside the record; 3) by vouching for the veracity of the state's witnesses; 4) that there was a prevalence of violence in society; and 5) that the death penalty was the appropriate sentence.
Grounds 2-5 were not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Petitioner did raise them in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590; Foster v. Delo, 39 F.3d 873, 880 (8th Cir. 1994); Byrd v. Delo, supra.
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra, Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.
As for Ground 1 (prosecutor improperly argued that petitioner was personally responsible for the stabbing of victim Thompson), this claim was raised in his direct appeal to the Missouri Supreme Court. The Missouri Supreme Court first noted that trial counsel had failed to raise an objection at the time of the argument, thereby failing to preserve any contention of trial error pertaining to that portion of the prosecutor's argument regarding petitioner's involvement in the stabbing of Thompson. State v. Schneider, 736 S.W.2d at 398. The Missouri Supreme Court further concluded that the prosecutor's argument was not so improper as to warrant a mistrial because there was circumstantial evidence supporting an inference that petitioner had personally stabbed Thompson. Id., at 398. The Court noted that despite the petitioner's reliance (in his motion for a new trial and in his direct appeal) on the statements made by David Morgan in Morgan's deposition, neither the State nor petitioner had introduced the deposition into evidence. Id., at 398, n. 6.
This Court has reviewed the trial record and concurs that trial counsel failed to object to the prosecutor's comments regarding petitioner's involvement in the stabbing of Thompson. State's Exhibit A  Trial Transcript, pgs. 1814 (guilt phase); 1950-51, 1957 (sentencing phase). Furthermore, the Court finds that the prosecutor's comments were harmless with respect to both the conviction *827 and the death sentence.[10] The evidence adduced at trial clearly implicated the petitioner as the one who stabbed Thompson. Absent any evidence to the contrary, such as Morgan's deposition statements, it was reasonable for the jury to conclude, as did the prosecutor, that petitioner was responsible for the fatal stabbing of Thompson.

XI. Ineffective assistance of direct appeal counsel and Rule 29.15 appeal counsel

XII. Ineffective assistance of Rule 29.15 motion counsel
In his Eleventh and Twelfth claims, petitioner asserts that all of his post-conviction counsel rendered ineffective assistance of counsel. These claims must fail for federal habeas relief for two reasons. Firstly, petitioner did not present his claims of ineffective assistance of direct appeal counsel and Rule 29.15 motion counsel to the state courts; thus, these claims are procedurally barred. Petitioner did raise them in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, supra; Foster v. Delo, at 880; Byrd v. Delo, supra.
Secondly, Schneider can avoid the procedural bar if he can demonstrate "cause and actual prejudice". The only ground Schneider raises as cause for his procedural default is that his 29.15 motion counsel was ineffective for failing to raise his claim of ineffective assistance of direct appeal counsel before the motion court, and that his 29.15 appeal counsel was ineffective for failing to raise his claim of ineffective assistance of his 29.15 motion counsel before the Missouri Supreme Court. Since petitioner does not have a constitutional right to post-conviction counsel, the "ineffectiveness" of any of his post-conviction counsel cannot constitute cause for purposes of overcoming the procedural default. Coleman v. Thompson, supra; Foster v. Delo, at 877; Pollard v. Delo, at 888; Clark v. Groose, at 965.

XIII. The jury was improperly instructed on the weighing of aggravating circumstances because one aggravating circumstance was not properly defined and because the instruction required a unanimous finding by the jury of mitigating circumstances. (Instructions 30, 32, 36, and 38)
This claim was not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590; Foster v. Delo, 39 F.3d 873, 880 (8th Cir.1994); Byrd v. Delo, supra.
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional *828 right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra. Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.
Petitioner further argues that trial counsel's failure to object to improper instructions constitutes "cause" sufficient to overcome the procedural default. This argument too fails. See, Nave v. Delo, at 815.
Furthermore, as previously determined, both the Missouri state courts and the Eighth Circuit Court of Appeals have consistently found Missouri's aggravating and mitigating circumstances instructions to be constitutional. Murray v. Delo, supra; Battle v. Delo, supra. Furthermore, the fact that each of petitioner's prior convictions may be considered by the jury, pursuant to Instructions 30 and 36, as separate nonstatutory aggravating circumstances doesn't skew the weighing process.[11] The jury found the existence of three statutory aggravating circumstances, in addition to six nonstatutory aggravating factors (including the prior convictions); thus, whether or not the prior convictions were considered as a single nonstatutory factor or as separate factors is immaterial to the weighing process. Finally, petitioner does not contend that the instruction regarding his prior convictions was vague or that the prior convictions in some regard were inaccurate. Consequently, there was no consideration of an invalid constitutionally vague aggravating circumstance instruction. See, Williams v. Clarke, 40 F.3d 1529, 1538-39 (8th Cir.1994).

XIV. The trial court erred in believing that it had to follow the recommendation by the jury regarding the imposition of a death sentence
This claim was not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Nave v. Delo, 22 F.3d 802, 808 (8th Cir.1994) citing Smith v. Groose, 998 F.2d 1439, 1441 (8th Cir.1993) ("The failure to satisfy state procedural requirements serves as an adequate and independent state procedural bar to review.").
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra. Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.
Furthermore, the trial record indicates that the trial judge simply stated only that "it is the Court's intention to assess punishment in accordance with the verdict of the jury, that is, an assessment of death on Count I and an assessment of death on Count II." State's Exhibit A  Trial Transcript, pgs. 1994-95. He told counsel to consider the Court's intention when preparing their post-trial motions. Trial Transcript, pg. 1995. Counsel not only submitted written post-trial motions, but were allowed to argue their motions at a hearing before the Court prior to sentencing. Trial Transcript, pgs. 2002-2068. When it came time for sentencing, the trial judge reiterated the fact that he had read and listened to petitioner's counsel's arguments in support of the motion for a new trial; and he gave trial counsel a second chance to address the Court on behalf of the petitioner. Trial Transcript, pgs. 2068-69, 2078-2087. When sentencing the petitioner, the trial judge expressed his own personal opinion regarding the death penalty *829 in general; however, he clearly stated that the law allowed for the imposition of the death penalty and that he would follow the law. Trial Transcript, pg. 2090. Finally, he unequivocally stated that after reviewing the presentence investigation report, the evidence adduced at trial, and in consideration of the jury's verdict, he had arrived at his decision to impose the death sentence on Counts I and II. Trial Transcript, pg. 2093. Since the record supports the trial judge's decision as one reached after consideration of counsel's post-trial arguments, evidence adduced at trial, the presentence investigation report, and the jury's findings, this Court sees no need to conduct an evidentiary hearing to explore the reasoning behind the trial judge's decision to sentence the petitioner to death on Counts I and II.

XV. Petitioner's Fourth Amendment rights were violated by the warrantless search of his car and the warrant search of his residence
The State and the petitioner appear to believe that this claim, in its entirety, was presented to the state courts where it was exhausted for purposes of federal habeas review. However, this Court's review of the state court record clearly indicates that petitioner presented his claim as to the warrantless search of his car (at the time of his arrest) to the trial court in his motion for a new trial. He never presented this claim to the Missouri Supreme Court in his direct appeal or in his Rule 91 state habeas petition; consequently, it is procedurally defaulted. Nave v. Delo, 22 F.3d 802, 808 (8th Cir.1994) citing Smith v. Groose, 998 F.2d 1439, 1441 (8th Cir.1993) ("The failure to satisfy state procedural requirements serves as an adequate and independent state procedural bar to review."). Petitioner offers no grounds as "cause" for failing to include this claim in his direct appeal or Rule 91 state habeas petition.
His claim as to the warrant search of his residence was presented to the Missouri Supreme Court in his direct appeal and Rule 91 state habeas petition; thus, it is exhausted for purposes of federal habeas review.
Under Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), a state prisoner is precluded from asserting a Fourth Amendment claim as a basis for federal habeas relief unless the petitioner can demonstrate that the state courts have not afforded the petitioner a full and fair opportunity to litigate the claim. Stone v. Powell, 428 U.S. at 494, 96 S.Ct. at 3052; Willett v. Lockhart, 37 F.3d 1265, 1270 (8th Cir.1994); Cortis v. Kenney, 995 F.2d 838, 841 (8th Cir.1993). The Eighth Circuit Court of Appeals has set forth a two-part test to determine whether a habeas petitioner has had an opportunity for a full and fair litigation of a Fourth Amendment claim in state courts. Willett v. Lockhart, at 1273. A Fourth Amendment claim is barred from federal habeas review under Stone v. Powell unless: 1) the state provided no procedure by which the petitioner could raise his/her Fourth Amendment claim, or 2) the petitioner was foreclosed from using that procedure because of an unconscionable breakdown in the system. Willett v. Lockhart, at 1273.
In the present case, Missouri provided the petitioner with several avenues by which to present his Fourth Amendment claim and he took full advantage of these opportunities to present his claim. His trial counsel filed a motion for new trial which argued that the trial court had erred in overruling petitioner's motion to suppress the introduction of items seized in the warrant search of petitioner's residence at 2246 Jules. State's Exhibit C  Amended Legal File, pgs. 2-4 of the Motion for New Trial (pgs. 435-37 of the Exhibit). When the motion for a new trial was denied; petitioner raised this claim regarding the warrant search of his residence in his direct appeal. The Missouri Supreme Court thoroughly reviewed the claim and concluded that the items seized which were not listed on the search warrant were seized properly under the "plain view doctrine". State v. Schneider, 736 S.W.2d at 399.
Petitioner claims that he did not receive a full and fair litigation of this claim before the trial court due to the ineffectiveness of his trial counsel. Petitioner's Traverse, pg. 37. This argument lacks merit for two reasons. Firstly, the standard of review *830 by this Court is limited solely as to whether Missouri provided an opportunity for litigation of the petitioner's claim. "The federal courts on habeas review of such claims are not to consider whether full and fair litigation of the claims in fact occurred in the state courts, but only whether the state provided an opportunity for such litigation." Willett v. Lockhart, at 1273. The record is clear that petitioner was provided more than one opportunity to litigate this claim in the state courts. Secondly, trial counsel adequately presented this claim in the motion to suppress and the motion for new trial. The fact that both motions were denied does not automatically cast aspersions upon his performance as petitioner's counsel. Furthermore, this claim was then presented by different counsel in post-conviction proceedings, where the claim was again denied.
Pursuant to the afore-mentioned reasons, Petitioner's Fourth Amendment claim regarding the warrant search of his residence is barred from federal habeas review under Stone v. Powell, supra,

XVI. Prosecutorial misconduct  prosecutor's remarks regarding the petitioner's post-arrest silence
This claim consists of two parts: the prosecutor's alleged statements, during argument at the penalty phase, regarding the petitioner's post-arrest silence and the prosecutor's extraction of evidence of petitioner's post-arrest silence through the testimony of state's witness Roland Johnson.
This claim was not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590; Foster v. Delo, 39 F.3d 873, 880 (8th Cir.1994); Byrd v. Delo, supra.
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra. Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.
Petitioner further alleges that his trial counsel's failure to object to Roland Johnson's testimony constitutes "cause" sufficient to overcome the procedural default. This argument too lacks merit.
Establishing cause for a procedural default "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Parkus v. Delo, 33 F.3d 933, 938 (8th Cir.1994) quoting Murray v. Carrier, 477 U.S. at 488, 106 S.Ct. at 2645-46. "A petitioner may demonstrate an objective impediment to compliance with a procedural rule by showing that the `factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable.'" Parkus v. Delo, at 938 quoting Murray v. Carrier, 477 U.S. at 488, 106 S.Ct. at 2645-46. Petitioner can establish "cause" by his trial counsel's allegedly ineffective assistance only if such deficient assistance significantly created an impediment to compliance. See, Murray v. Carrier, 477 U.S. at 488-97, 106 S.Ct. at 2645-50. Trial counsel's decision not to object to Johnson's testimony is not "some objective factor external to the defense" which impacted upon trial counsel, appellate counsel, or even the petitioner's efforts to include this claim in petitioner's post-conviction pleadings.
Furthermore, the trial record demonstrates that trial counsel was not ineffective for failing to object to the prosecutor's statements in argument during the penalty phase or for failing to object to Johnson's testimony. The petitioner fails in both his *831 amended petition and in his traverse to identify the alleged improper statements made by the prosecutor during the penalty phase of petitioner's trial. The Court has carefully reviewed both the opening and closing arguments made by the prosecutor at the penalty phase and cannot find any statements made by the prosecutor regarding the petitioner's post-arrest silence. State's Exhibit A  Trial Transcript, pgs. 1909-10, 1947-58. This part of the claim has no factual support in the trial record.
As for Mr. Johnson's testimony, the Court finds that his reference to the petitioner's post-arrest silence was extremely brief and insignificant. The offending statement was made during redirect of the witness by the prosecutor. Earlier in cross-examination, trial counsel had attacked the witness' credibility by addressing the fact that the witness had first refused to make a statement to the police (after being arrested) but then later did make a statement whereupon he was released from jail. State's Exhibit A  Trial Transcript, pgs. 1351-52. During redirect examination, the prosecutor asked Johnson the reason he had first refused to make a statement to the police. Trial Transcript, pg. 1358. Trial counsel raised an objection regarding potential hearsay in the witness' answer. There was considerable sidebar discussion. The trial court ruled that any testimony regarding what police officers said would be inadmissible as hearsay, but he allowed the witness to testify as to the witness' reasons for his initial refusal to make a statement to the police. Trial Transcript, pgs. 1358-61. Johnson testified that "[t]he reason I didn't make a statement the first time I felt as though Schneider and Morgan would go ahead and tell their side of the story." Trial Transcript, pg. 1361.
This statement was elicited during the prosecutor's attempt to rehabilitate his witness. Petitioner has made no showing that the prosecutor knew that his witness would respond to the questioning by an indirect reference to the petitioner's post-arrest silence. Furthermore, the trial record shows that trial counsel did object to the potential testimony, albeit did not object to this particular response once it was made. Finally, petitioner has failed to demonstrate that this isolated indirect comment had a substantial and injurious effect on the trial as a whole, or greatly influenced the jury's verdict.

XVII. The jury selection procedures utilized by the trial court created a jury violative of petitioner's Sixth and Fourteenth Amendment rights
Petitioner's claim regarding the jury selection presents two grounds for federal habeas relief: 1) the jury selection procedures employed by the Twenty-Third Judicial Circuit systematically under-represents minorities, women, and young people in the available pools of potential jurors, thereby, violating the petitioner's right to a jury representing a fair cross-section of the community; and 2) Missouri statute 546.230 requires sequestration of the jury in a capital murder case, thereby disproportionately excluding women with small children.
This claim was not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590; Foster v. Delo, 39 F.3d 873, 880 (8th Cir.1994); Byrd v. Delo, supra.
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra, Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.
*832 Petitioner further attempts to establish "cause" for his procedural default by alleging the ineffective assistance of his trial counsel for failing to object to the trial court's dismissal of various jurors. However, as already noted by the Court, trial counsel's failure to object at trial to the trial court's rulings (regarding juror dismissals, evidence, etc.) does not establish "cause" for the omission of this claim in the petitioner's post-conviction pleadings.
Finally, having found this claim to be procedurally barred, petitioner has no right to an evidentiary hearing before this Court. See, Boyd v. Delo, 999 F.2d 1286, 1289, n. 6 (8th Cir.1993).

XVIII. Petitioner was denied his Sixth Amendment rights to present a defense because co-defendant David Morgan's plea agreement was excluded from jury consideration, as well as evidence showing that the police conducted a "faulty" investigation
The portion of the claim regarding Morgan's plea agreement as violating the petitioner's Sixth Amendment rights to present a defense was not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590; Foster v. Delo, 39 F.3d 873, 880 (8th Cir.1994); Byrd v. Delo, supra.
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra. Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.
Petitioner further attempts to establish "cause" for his procedural default by alleging the ineffective assistance of his trial counsel for failing to object to the trial court's rulings excluding the evidence of David Morgan's plea agreement and for not attempting to introduce this evidence. As already noted by the Court, trial counsel's failure to introduce evidence or object at trial to the trial court's rulings (regarding juror dismissals, evidence, etc.) does not constitute ineffective assistance of counsel which establishes "cause" for the omission of this claim in the petitioner's post-conviction pleadings.
As for the remaining portion of this claim (the "faulty" investigation by the police), petitioner raised this claim in both his direct appeal and his Rule 91 state habeas petition, thus, this claim is exhausted for federal habeas purposes.
Petitioner contends that the trial court erred when it prohibited petitioner's counsel from cross-examining the testifying police investigative personnel as to their failure to gather certain types of evidence and to conduct certain type of tests. He argues that the police failed to conduct a thorough investigation due to co-defendant Morgan's "fingering" of the petitioner; thus, he was precluded from demonstrating bad faith and bias on the part of the investigating police officials.
The Missouri Supreme Court found that under Missouri law the State is not bound to gather all physical evidence conceivably relevant to a case, and is not required to account for its failure to gather or present such evidence. It further found that a defendant is not entitled to draw an adverse inference from the State's alleged failure to gather certain physical evidence. State v. Schneider, 736 S.W.2d at 401-02. The Missouri Supreme Court cited a long list of state court decisions supporting its holding. Id., at 402. Thus, it is clear that the Missouri Supreme Court's denial of this issue on appeal rested on adequate and independent *833 state grounds. Such a decision normally precludes a federal court from reviewing the issue again in a federal habeas proceeding. Coleman v. Thompson, 501 U.S. at 729-32, 111 S.Ct. at 2553-55. However, there is an exception to the adequate and independent state ground doctrine.
The permissible scope of cross-examination is a question of state law, and ordinarily the courts allow for some latitude with respect to witness credibility and bias. Pickens v. Lockhart, 4 F.3d 1446, 1454 (8th Cir.1993). An alleged evidentiary error "would not warrant federal habeas relief unless it can be shown that the ruling violated a specific constitutional provision or resulted in a trial so fundamentally unfair as to violate due process." Pickens v. Lockhart, at 1454 citing Cooley v. Lockhart, 839 F.2d 431, 432 (8th Cir.1988); see also, Ford v. Armontrout, 916 F.2d 457, 460 (8th Cir.1990). "The habeas petitioner must establish an error which demonstrates a violation of due process by a burden much greater than that required on direct appeal and even greater than the showing of plain error." Mendoza v. Leapley, 5 F.3d 341, 342 (8th Cir.1993).
Petitioner has failed to meet his burden. He accuses the investigating police officials of "sloppy work" but fails to identify for the Court the particular incidents of "sloppy work". He states that:
"because of Morgan, the police did not do a standard investigation. Things were not done that normally would have been done. As a result, evidence was not obtained that would otherwise be obtainable. Clearly, the police felt they could coast by relying on Morgan's statements without considering his self-motivation."
Petitioner's First Amended Petition for Writ of Habeas Corpus, pg. 117. Nowhere does the petitioner identify what constitutes a "standard investigation" nor does he identify the evidence that should have been but was not obtained. In his direct appeal, he refers to the investigating officials' failure to gather dog hair, human hair, fiber or soil samples or to perform atomic absorption tests to determine whether petitioner had recently fired a handgun; however, he fails [in his amended habeas petition] to demonstrate how these alleged failures denied the petitioner a fair trial in light of all the incriminating evidence adduced at trial. Furthermore, his link of "sloppy police work" to Morgan's assistance to the police is based entirely upon supposition. State's Exhibit A  Trial Transcript, pgs. 904-08, 940-43, 948-50. Petitioner fails to demonstrate that he was convicted in an unfair trial because he was not allowed to present a defense based upon an adverse inference from the State's alleged failure to gather certain "evidence". Petitioner's conviction was properly based upon the State's physical evidence and witnesses' testimony. Trial counsel was given ample opportunities to cross-examine witnesses as to the credibility of the physical evidence gathered. His Sixth Amendment rights were not violated by the trial court's rulings; nor did the trial court's rulings fatally infect the trial and deny the petitioner fundamental fairness.

XIX. The Missouri Supreme Court failed to conduct a proper proportionality review
Petitioner claims that he is in custody in violation of his constitutional rights and that the death penalty has been imposed in an arbitrary and capricious manner in light of the punishment received by his co-defendants. This claim was presented to the state courts through petitioner's post-conviction proceedings and was denied by the Missouri Supreme Court. It specifically found, based upon the trial record, that "the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor." State v. Schneider, 736 S.W.2d at 404. It further found that "[t]he record supports the jury's findings in all particulars as to the aggravating circumstances they certified and our independent review reveals the evidence against this defendant was indeed overwhelming". Id., at 404. Finally, it concluded that "[t]he sentences of death were neither excessive nor disproportionate to the penalties imposed in similar cases considering the crimes, the strength of the evidence, and the circumstances surrounding the defendant." Id., at 404.
In order for federal jurisdiction to exist, the petitioner must allege that he is in *834 custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Petitioner only alleges that he is in custody under a penalty of death because the Missouri Supreme Court failed to conduct a proper proportionality review. Whether the Missouri Supreme Court conducted a proper proportionality review is a matter of state law which is insufficient to establish a constitutional violation. See, Scott v. Jones, 915 F.2d 1188 (8th Cir.1990).
Furthermore, there is no constitutional right to a proportionality review. Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); Foster v. Delo, at 882; Murray v. Delo, at 1376-77. The only requirement is that the states utilize methods to insure that capital punishment is not imposed in an arbitrary and capricious manner. Pulley v. Harris, supra, In accordance with Missouri law, § 565.035 R.S.Mo., the Missouri Supreme Court is required to review all capital punishment cases.
"The question of proportionality involves a comparison with other cases, and the issue to be sure, is not soluble in precisely quantifiable terms. It involves the exercise of discretion and judgment. That is true of many crucial issues in law  deciding what a reasonably prudent person would do in certain circumstances, for example. We see no unfairness or deprivation of due process in the Missouri Supreme Court's procedures for exercising a proportionality review."
Murray v. Delo, at 1377. In the instant case, the Missouri Supreme Court conducted a proportionality review by reviewing other similar cases and specifically found that the sentences of death were not excessive or disproportionate given the crimes, the strength of the evidence, and the circumstances surrounding the petitioner. State v. Schneider, 736 S.W.2d at 404.
As for petitioner's claim that the review was not proper because it did not consider the sentences given to petitioner's co-defendants, such an argument lacks merit. In Foster v. Delo, supra, petitioner Foster presented the same argument to the Eighth Circuit Court of Appeals. Id., at 882. The appellate court rejected this argument noting that there is no Eighth Amendment right to a proportionality review in the first place, and that Missouri law does not require a comparison of sentences of co-defendants. Id., at 882.

XX. The trial court erred in admitting testimony from two of the State's expert witnesses because said testimony was unreliable
This claim was not raised in a motion for new trial or on direct appeal; consequently, it is procedurally defaulted. Petitioner did raise it in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590; Foster v. Delo, 39 F.3d 873, 880 (8th Cir.1994); Byrd v. Delo, supra.
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra. Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.
Even if petitioner's claim were not procedurally defaulted, this Court finds that petitioner is not entitled to federal habeas relief. The admission of evidence in a state trial is a matter of state law. Clark v. Groose, at 963 citing Glaze v. Redman, 986 F.2d 1192, 1195 (8th Cir.1993). Matters of state law ordinarily are not a proper basis for federal habeas relief. However, an alleged evidentiary error "would not warrant federal habeas relief unless it can be shown that the ruling violated a specific constitutional provision or resulted in a trial so fundamentally *835 unfair as to violate due process." Pickens v. Lockhart, at 1454 citing Cooley v. Lockhart, 839 F.2d 431, 432 (8th Cir.1988); see also, Ford v. Armontrout, 916 F.2d 457, 460 (8th Cir.1990). "The habeas petitioner must establish an error which demonstrates a violation of due process by a burden much greater than that required on direct appeal and even greater than the showing of plain error." Mendoza v. Leapley, 5 F.3d 341, 342 (8th Cir.1993).
Petitioner's contention is that the testimony of the State's expert witnesses Roger Corcoran and Jan Vessell was "unreliable". Whether their testimony was reliable or not is an issue that goes to the weight of their testimony, not to its admission. Witnesses' credibility is strictly a jury matter, and not a matter for federal habeas review by this Court. Schlup v. Delo, 11 F.3d 738, 741 (8th Cir.1993), rev'd on other grounds Schlup v. Delo, ___ U.S. ___, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).
Furthermore, a review of their trial testimony fails to demonstrate that their testimony was so grossly prejudicial as to fatally infect the trial and deny petitioner due process.
Petitioner argues that Roger Corcoran was allowed to testify to the presence of blood on a knife seized from petitioner despite the absence of a reaction, and as to the reason for the lack of blood on victim Thompson's socks despite a proper scientific foundation. First Amended Petition for Writ of Habeas Corpus, pg. 127. Petitioner's allegations are not supported by the trial record. Mr. Corcoran thoroughly explained the procedures for testing for the presence of blood. State's Exhibit A  Trial Transcript, pgs. 1644-1647. He testified that the "presumptive test" would turn the suspected stain a "red color or a pinkish-red color if there is a possible presence of blood." Trial Transcript, pg. 1645. He further testified that after testing the petitioner's knife, the "presumptive test" turned the suspected stain "a very pink color". Trial Transcript, pgs. 1645-46. His opinion was that the reaction was neither "weak" nor "strong", but rather "in-between" and that he believed, based upon his findings, that the stain was blood. Trial Transcript, pg. 1646, 1663-64. Petitioner's trial counsel was allowed to pursue a very thorough cross-examination of Mr. Corcoran which stressed the weaknesses in his testimony. Trial Transcript, pgs. 1654-55. Mr. Corcoran's opinion was properly presented and challenged; the weight of it was for the jury to consider. There was nothing in Mr. Corcoran's testimony which was fundamentally unfair to the petitioner.[12]
As for Ms. Vessell's testimony, petitioner argues that she was improperly allowed to testify that a latent print found on a bottle of Beaujolais wine seized from one of petitioner's co-defendant's home was "probably" that of victim Thompson even though there were not enough prints to make a conclusive identification. First Amended Petition for Writ of Habeas Corpus, pg. 127. A review of Ms. Vessell's testimony fails to demonstrate that it was so grossly prejudicial as to fatally infect the trial and render it fundamentally unfair. Ms. Vessell testified that the latent print she lifted from the wine bottle in question "definitely did not match either Schneider, Palmer, or Morgan." Trial Transcript, pgs. 1779-80. She further testified that the latent print was probably that of Thompson.
Q. Did you have the occasion to compare that against the known prints of Ronald Thompson and Richard Schwendemann?
A. Yes, I did.
Q. And as a result of that comparison what conclusions, if any, could you make?
A. I made a probable comparison that it was to Ronald Thompson. There wasn't *836 enough points visible to make a conclusive identification.
Q. When you say a probable match what do you base that on?
A. That the general configuration of the fingerprint could not have belonged to any of the suspects. However, it was extremely similar and there were several point matching with one of the victims.
Q. Okay. And which victim was that?
A. Ronald Thompson.
Trial Transcript, pg. 1780. Firstly, Ms. Vessell did not testify that there were not enough "prints" to make a conclusive match; she testified that there were not enough "points" on this particular latent print to make a conclusive match. Secondly, the fact that she could not make a conclusive match but rather instead it was a "more likely than not" match does not render her testimony inadmissible. Whatever weaknesses there were in her opinion goes to the weight of her testimony, an issue for the jury to consider. There is nothing in her testimony which was so prejudicial that it rendered petitioner's trial fundamentally unfair and denied him due process.

XXI. Trial court erred in precluding petitioner's trial counsel from cross-examining co-defendant David Morgan, and in limiting his cross-examination of Roland Johnson, Pat Shaffer, and Pat Woodside
Petitioner's claims regarding David Morgan, Roland Johnson, and Pat Shaffer were not raised in a motion for new trial or on direct appeal; consequently, they are procedurally defaulted. Petitioner did raise them in his Rule 91 petition, but the Missouri Supreme Court's denial of the petition did not remove the procedural bar. Coleman v. Thompson, supra; Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590; Foster v. Delo, 39 F.3d 873, 880 (8th Cir.1994); Byrd v. Delo, supra.
Petitioner attempts to avoid the procedural bar by alleging that "cause" for his procedural default is that his appeal counsel was ineffective for failing to raise this claim on appeal to the Missouri Supreme Court. Schneider's argument that the ineffectiveness of his direct appeal counsel constitutes "cause" sufficient to overcome the procedural default fails because absent a constitutional right to post-conviction counsel, attorney error cannot provide cause to overcome a procedural bar. Coleman v. Thompson, supra; Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994); Pollard v. Delo, 28 F.3d 887, 888 (8th Cir.1994); Jolly v. Gammon, supra. Since petitioner has failed to establish cause, the Court need not consider whether he was actually prejudiced.
Petitioner further attempts to establish "cause" for his procedural default by alleging the ineffective assistance of his trial counsel for "not properly presenting this issue to the trial court". Petitioner's Traverse, pg. 41. Petitioner fails to specify what steps trial counsel did or did not take so as to "not properly present this issue to the trial court." First Amended Petition for Writ of Habeas Corpus, pgs. 128-29; Petitioner's Traverse, pg. 41. Furthermore, as already noted by the Court, trial counsel's failure to object at trial to the trial court's evidentiary rulings does not establish "cause" for the omission of this claim in the petitioner's post-conviction pleadings.
Even if petitioner's claims regarding David Morgan, Roland Johnson, and Pat Shaffer were not procedurally defaulted, this Court finds that petitioner is not entitled to federal habeas relief. The permissible scope of cross-examination is a matter of state law, and normally counsel is accorded a fair amount of latitude with respect to witness credibility and bias. Pickens v. Lockhart, 4 F.3d 1446, 1454 (8th Cir.1993). Matters of state law ordinarily are not a proper basis for federal habeas relief. However an alleged evidentiary error "would not warrant federal habeas relief unless it can be shown that the ruling violated a specific constitutional provision or resulted in a trial so fundamentally unfair as to violate due process." Pickens v. Lockhart, at 1454 citing Cooley v. Lockhart, 839 F.2d 431, 432 (8th Cir.1988); see also, Ford v. Armontrout, 916 F.2d 457, 460 (8th Cir.1990). "The habeas petitioner must establish an error which demonstrates a violation of due process by a burden much *837 greater than that required on direct appeal and even greater than the showing of plain error." Mendoza v. Leapley, 5 F.3d 341, 342 (8th Cir.1993). Petitioner fails to meet his burden.
Firstly, David Morgan did not testify, thus, there is no habeas issue regarding the trial court's preclusion of trial counsel's cross-examination of Morgan. Secondly, the trial record shows that petitioner's counsel was allowed to question Roland Johnson as to any threats or promises made by the police. State's Exhibit A  Trial Transcript, pgs. 1346-1348. The trial judge sustained an objection to trial counsel's questioning on the subject of threats or promises because the questioning had become repetitive and argumentative. Trial Transcript, pgs. 1348-50. Trial counsel was allowed to proceed with his inquiry as to threats or promises once he began to properly frame his questions. Trial Transcript, pgs. 1350-52. Consequently, trial counsel was allowed to thoroughly examine, which he did, Johnson regarding threats or promises. Finally, the Court has reviewed the entire trial testimony of Patrick Shaffer and the record is completely void of any attempts by petitioner's counsel to question Shaffer regarding alleged threats or promises made by the police. Trial Transcript, pgs. 1449-1484. Since there were no questions asked regarding threats or promises, and thus, no objections sustained, there is no issue regarding the trial court's error in limiting the cross-examination of Patrick Shaffer.
Petitioner did present this claim as to Pat Woodside to the Missouri Supreme Court. State v. Schneider, 736 S.W.2d at 401. Petitioner asserts that the trial court erred in limiting counsel's cross-examination as to any threats or promises made to Ms. Woodside by the police prior to her making a statement, or as to any "details" supplied by the police which were later incorporated in Ms. Woodside's statement. The Missouri Supreme Court rejected this claim for two reasons. Firstly, it noted that trial counsel had failed to make an offer of proof preserving the matter for appellate review.[13]State v. Schneider, 736 S.W.2d at 401. Secondly, it found that even if the trial court had ruled in error, petitioner was not prejudiced because the gist of the testimony trial counsel was attempting to elicit (i.e. any threats, promises, etc. by the police) was obtained through other parts of her admissible testimony. Id., at 401.
This Court's independent review of Ms. Woodside's trial testimony confirms the findings of the Missouri Supreme Court. Trial Transcript, pgs. 1196-1278. Trial counsel attempted to elicit from Ms. Woodside what the police officers said to her when she was brought to the police station for questioning. An objection based on hearsay was sustained despite trial counsel's argument that he was offering the testimony not for the truth of the matter asserted. Trial Transcript, pgs. 1236-43. The Court agrees with the Missouri Supreme Court's findings that petitioner was not prejudiced by the limitation on cross-examination because under proper questioning she repeatedly stated that she had not been threatened or promised anything by the police or by the State regarding her statement to the police. Trial Transcript, pgs. 1225, 1254-55, 1266-68. Consequently, the trial court's ruling did not render the trial fundamentally unfair as to deny petitioner due process.

XXII. The trial court erred by not granting a mistrial when the State prosecutor intentionally elicited prohibited testimony from Pat Woodside concerning a threatening phone call from the petitioner
This claim was presented to the Missouri Supreme Court and was denied. State v. Schneider, 736 S.W.2d at 399-401. Thus, it is exhausted for federal habeas review purposes.
Prior to Ms. Woodside's testimony, the trial court had granted petitioner's motion in limine to exclude references to any threats petitioner had made to Ms. Woodside. However, *838 during her direct examination Ms. Woodside testified, without objection from petitioner's trial counsel, that after agreeing to purchase the video cassette recorder stolen during the murders for $100.00 (upon her next payday), petitioner had warned her that she had better not "try to screw me out of my money" or that he and another man named Steve Goode would come looking for her (the implication is clear that Ms. Woodside knew this man and had reason to fear him). State's Exhibit A  Trial Transcript, pgs. 1203-04. Later in her direct testimony, again without objection from trial counsel, Ms. Woodside testified that petitioner called her demanding payment for the stolen merchandise she had acquired from him. Trial Transcript, pgs. 1215-16.
The particular testimony in question occurred later during her redirect examination. Ms. Woodside had been testifying as to the circumstances surrounding the statement she gave to the police. Then the following exchange took place:
Q. All right. Thank you. Why didn't you return the items that you had in your apartment after you had learned that they may have been involved in a double murder?
A. I received a threatening phone call at work.
Q. Is that the phone call that you previously described to us?
A. Yes.
Q. From Mr. Schneider?
A. It is.
Trial Transcript, pgs. 1269-1271. At this point trial counsel asked for a sidebar conference where he pointed out that this line of questioning was within the realm of the petitioner's motion in limine. The trial court concurred. The prosecutor stated to the trial court that "I didn't mean to try to get into it. At that time I was asking her for the reason and that's what she came up with and I hadn't talked to her or anything." Trial Transcript, pg. 1270.
Trial counsel then asked for a mistrial. He specifically informed the court that he did not want a cautionary instruction "for fear that it would accent" the testimony. Trial Transcript, pgs. 1270-71. The trial court denied his request for a mistrial. Trial Transcript, pg. 1271.
The Missouri Supreme Court specifically found, that under Missouri law, declaration of a mistrial is a drastic remedy best left to the trial judge's discretion, and that the trial court's determination of the necessity of a mistrial will not be disturbed in the absence of an abuse of discretion. State v. Schneider, 736 S.W.2d at 400-01. It held that no such abuse had taken place with regard to Ms. Woodside's testimony. Id., at 401.
The determination of the necessity of a mistrial is a matter of state law. It is a drastic remedy only to be utilized when no other means exist to minimize or remove the prejudice to the defendant. The determination of the necessity of a mistrial is left to the trial judge's discretion. State v. Twenter, 818 S.W.2d 628, 633 (Mo.1991); State v. Feltrop, 803 S.W.2d 1, 9 (Mo.1991); State v. Hornbuckle, 769 S.W.2d 89, 96 (Mo.1989); State v. Davis, 653 S.W.2d 167, 176 (Mo. 1983).
Matters of state law ordinarily are not a proper basis for federal habeas relief. An alleged evidentiary error "would not warrant federal habeas relief unless it can be shown that the ruling violated a specific constitutional provision or resulted in a trial so fundamentally unfair as to violate due process." Pickens v. Lockhart, at 1454 citing Cooley v. Lockhart, 839 F.2d 431, 432 (8th Cir.1988); see also, Ford v. Armontrout, 916 F.2d 457, 460 (8th Cir.1990). "The habeas petitioner must establish an error which demonstrates a violation of due process by a burden much greater than that required on direct appeal and even greater than the showing of plain error." Mendoza v. Leapley, 5 F.3d 341, 342 (8th Cir.1993).
The Court has reviewed Ms. Woodside's entire trial testimony, including that portion regarding petitioner's alleged phone threat. Trial Transcript, pgs. 1269-71. The Court concurs with the Missouri Supreme Court's findings that this testimony, even if violative of the trial court's order on the motion in limine, did not entitle the petitioner *839 to a mistrial. Firstly, petitioner fails to establish, and there is nothing on the record to show, that the state prosecutor "intentionally" elicited this particular response. This Court must, as did the trial judge, accept the state prosecutor's explanation that he had no prior knowledge that Ms. Woodside's explanation for not returning the stolen items would be tied to a phone threat, especially to the phone call she had already testified to receiving from the petitioner. Trial Transcript, pg. 1270. Secondly, in light of the fact that Ms. Woodside had already specifically testified to petitioner's threatening conversation with her regarding the payment for the stolen videocassette recorder, and his phone call to her from jail demanding payment, both without objection, her later general reference to a "threatening phone call at work" was not so prejudicial as to infect the entire trial and deny petitioner fundamental fairness. Griffin v. Delo, 946 F.2d 1356, 1358-59 (8th Cir.1991); State v. Williamson, 836 S.W.2d 70, 73 (Mo.App.1992). Finally, the Court notes that trial counsel was given the option of a cautionary instruction which he refused. Under the circumstances, this instruction would have eliminated whatever prejudice the petitioner may have suffered by this testimony.

XXIII. Trial court erred in denying petitioner's motion for change of venue
Petitioner' claim was presented to the Missouri Court of Appeals on direct appeal; thus, it is exhausted for federal habeas review purposes.
In order for federal jurisdiction to exist, the petitioner must allege that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Petitioner only generally alleges that he is in custody under a penalty of death because the Missouri Supreme Court failed to grant his motion for a change of venue. The decision of whether or not to grant a change of venue request is governed by Missouri Supreme Court Rule 32.04. State v. Feltrop, at 6; State v. Schneider, 736 S.W.2d at 402. Consequently, this is a matter of state law which is insufficient to establish a constitutional violation. See, Scott v. Jones, 915 F.2d 1188 (8th Cir.1990).
Matters of state law ordinarily are not a proper basis for federal habeas relief. An alleged evidentiary error "would not warrant federal habeas relief unless it can be shown that the ruling violated a specific constitutional provision or resulted in a trial so fundamentally unfair as to violate due process." Pickens v. Lockhart, at 1454 citing Cooley v. Lockhart, 839 F.2d 431, 432 (8th Cir.1988); see also, Ford v. Armontrout, 916 F.2d 457, 460 (8th Cir.1990). "The habeas petitioner must establish an error which demonstrates a violation of due process by a burden much greater than that required on direct appeal and even greater than the showing of plain error." Mendoza v. Leapley, 5 F.3d 341, 342 (8th Cir.1993).
Although there is no constitutional right to a change of venue, petitioner contends that the trial court's denial of his request violated his Sixth Amendment and Fourteenth Amendment rights to a fair and impartial jury. His claim rests primarily upon the amount of media coverage pertaining to the murders. In support of his motion, petitioner submitted numerous newspaper articles, radio broadcasts, and television reports (i.e. tapes and transcripts) pertaining to the case. At a hearing on his motion, he presented the testimony of a State Representative and a Jefferson County Commissioner who were former neighbors of the murder victims. State's Exhibit A  Trial Transcript, pgs. 9-53; State's Exhibit C  Amended Legal File, pgs. 47-74, 196-197, 237-290; State v. Schneider, 736 S.W.2d at 402-03. The Missouri Supreme Court found that the majority of the media reports occurred within a month of the crime; that a very small number of newspaper articles (and no radio or television reports) were published approximately three (3) months prior to trial.[14]State v. Schneider, 736 S.W.2d at 402. This Court's independent review of the trial record confirms the state court's findings.
*840 Although prejudice may be presumed from pretrial publicity when such publicity is "sufficiently prejudicial and inflammatory" and "saturates" the community where the trial is held, this presumption is rarely applied. Snell v. Lockhart, 14 F.3d 1289, 1293 (8th Cir.1994) citing Coleman v. Kemp, 778 F.2d 1487, 1490 (11th Cir.1985) and Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). In a federal habeas proceeding based upon a claim of presumed prejudice, the petitioner has a difficult burden to meet in establishing that the pretrial publicity was so inflammatory and so pervasive as to require a presumption of prejudice. Snell v. Lockhart, at 1294.
The Court has carefully reviewed the submitted newspaper articles and the radio and television reports (i.e. transcripts). The articles and the media reports are primarily factual, giving some details as to the nature of the murders. There are interviews with the arresting officers, but these deal primarily with the circumstances of the arrest and with David Morgan's statements to the police. There are approximately 4-5 articles which give a more "personal" touch to the reporting of the crime; i.e. statements by former students and co-workers. However, these articles were published shortly after the murders occurred; i.e., in the latter part of January 1985. A number of articles do not directly pertain to the petitioner; they report the widespread search and ultimate arrest of co-defendant Charles Palmer in California. Upon review of the media coverage, the Court finds that the coverage, though numerous, was fair, objective, and generally limited to conveying the facts to the public. Most of the coverage was confined to the initial weeks following the murders. In light of these findings, the Court concludes that the media coverage, although thorough, was not sensational nor so inflammatory as to require a presumption of prejudice. See, Snell v. Lockhart, supra.
Next to consider is whether Schneider received a fair trial; i.e. whether the jury was actually prejudiced by the pretrial publicity. In order to make this determination, an examination of the voir dire of the jury panel is necessary. Snell v. Lockhart, at 1294.
On federal habeas review, the state court's determination that the jury was not prejudiced by pretrial publicity and was qualified to hear the case is subject to a presumption of correctness and should only be overturned if the state court's findings are not fairly supported by the record, thereby resulting in "manifest error". Hill v. Lockhart, 28 F.3d 832, 847-48 (8th Cir.1994); Snell v. Lockhart, at 1294; Swindler v. Lockhart, 885 F.2d 1342, 1347 (8th Cir.1989) citing Patton v. Yount, 467 U.S. 1025, 1031-38, 104 S.Ct. 2885, 2888-93, 81 L.Ed.2d 847 (1984).
Approximately 150 venirepersons were examined. Trial Transcript, pgs. 279-785. Of these venirepersons, approximately 65 had prior knowledge of the case due to pretrial publicity. Trial Transcript, pgs. 288-91, 501-04. These veniremen were then questioned individually as to the source and extent of their exposure to pretrial publicity. Trial Transcript, pgs. 304-15, 318-467, 507-81. The Missouri Supreme Court found that:
Less than half of the veniremen questioned had ever heard of the offenses with which the defendant was charged. Those who had acquired some knowledge of the crimes were individually questioned concerning the source and extent of their information. Of these, some had seen nothing in the media, others had read only headlines or a single article and most of the rest remembered no details from the articles or broadcasts they had seen or heard; of the 65 veniremen who had some knowledge about the case, nine were excused for cause. Of the twelve veniremen ultimately seated on the jury only two had heard of the case, and they manifested an ability to put aside any previous impression and evaluate the case fairly.
State v. Schneider, 736 S.W.2d at 403.
The Court has reviewed the entire voir dire portion of the trial transcript and concurs with the findings of the state court. Although a number of jurors expressed some degree of prior knowledge of some aspect of the case, their prior knowledge was extremely general and those who expressed any reservation regarding the impact of their prior knowledge on their ability to objectively decide *841 the case on the evidence presented were excused for cause. Of the twelve jurors picked, only two had expressed any degree of prior knowledge, and both of these jurors were clearly able to put aside any preconceptions and decide the case on the evidence presented. Without question there was publicity about this case, and that people in the community where the murders took place were exposed to some form of media coverage, but under the Sixth Amendment "[t]he accused is not entitled to an ignorant jury, just a fair one." Simmons v. Lockhart, 814 F.2d 504, 510 (8th Cir.1987); see also, Snell v. Lockhart, at 1294-95; Swindler v. Lockhart, at 1348.
The Court also concurs with the state court's opinion that the petitioner's argument that the "[t]he victims were socially active and lived a homosexual lifestyle which tended to decrese [sic] the candidness on voir dire of veinermen [sic] regarding their knowledge of the victim, the case or any bias, Petitioner's Amended Petition for Writ of Habeas Corpus, pg. 131, is `pure conjecture,' unsupported by anything in the record." State v. Schneider, 736 S.W.2d at 403. Petitioner fails to present any piece of evidence to support such an absurd notion.

XXIV. Trial court erred in admitting autopsy photographs of the victims over the petitioner's objections
Petitioner presented this claim to the Missouri Supreme Court on direct appeal at which time it was denied. State v. Schneider, 736 S.W.2d at 403. This claim is exhausted for purposes of federal habeas review.
In order for federal jurisdiction to exist, the petitioner must allege that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Petitioner only alleges that he is in custody under a penalty of death because the trial court admitted autopsy photographs of the victims into evidence over the petitioner's objections. The admissibility of evidence is a matter of state law which is insufficient to establish a constitutional violation. See, Scott v. Jones, 915 F.2d 1188 (8th Cir.1990).
Petitioner, however, asserts that the admission of these photographs was so prejudicial as to deny him a fair trial and due process. As previously noted, the admission of evidence in a state trial is a matter of state law. Clark v. Groose, at 963 citing Glaze v. Redman, 986 F.2d 1192, 1195 (8th Cir.1993). Matters of state law ordinarily are not a proper basis for federal habeas relief. An alleged evidentiary error "would not warrant federal habeas relief unless it can be shown that the ruling violated a specific constitutional provision or resulted in a trial so fundamentally unfair as to violate due process." Pickens v. Lockhart, at 1454 citing Cooley v. Lockhart, 839 F.2d 431, 432 (8th Cir.1988); see also, Ford v. Armontrout, 916 F.2d 457, 460 (8th Cir.1990). "The habeas petitioner must establish an error which demonstrates a violation of due process by a burden much greater than that required on direct appeal and even greater than the showing of plain error." Mendoza v. Leapley, 5 F.3d 341, 342 (8th Cir.1993).
Petitioner's claim is without merit. The fact that petitioner may consider the photographs "gruesome" or that he stipulated to the cause of death of the victims is irrelevant. This Court's review is limited to a consideration of whether the photographs are relevant and probative or simply inflammatory and so prejudicial as to deny the petitioner a fair trial and due process. Hatley v. Lockhart, 990 F.2d 1070, 1072 (8th Cir.1993); Perry v. Lockhart, 871 F.2d 1384, 1391 (8th Cir.1989). The Court has reviewed the photographs and the trial record. There is no evidence from the trial record that these photographs were inflammatory. The photographs appear to be routine black and white photographs of the victims at the crime scene, as well as autopsy pictures, and were used to corroborate the testimony of the pathologist who performed the autopsies of the murder victims. State's Exhibit N  autopsy photographs; State's Exhibit A  Trial Transcript (Dr. Gordon L. Johnson), pgs. 1110-1169 (pgs. 1123-1125, 1144-1152 testimony relating to the photographs in question). They were relevant to the pathologist's testimony as to the nature and location of the wounds. Their "gruesome" aspect is directly attributable to the crime itself and *842 cannot serve as the basis for federal habeas relief.

XXV. Missouri's statutory scheme for imposition of the death penalty constitutes "cruel and unusual punishment" in violation of the Eighth Amendment
Petitioner's Eighth Amendment challenge to Missouri's death penalty statute was presented to and denied by the Missouri Supreme Court. State v. Schneider, 736 S.W.2d at 404. Missouri's statutory scheme for imposition of the death penalty has been consistently upheld as constitutional pursuant to the standards set forth in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). See, State v. Parkus, 753 S.W.2d 881, 885 (Mo.1988); State v. Driscoll, 711 S.W.2d 512, 517 (Mo.1986); State v. Newlon, 627 S.W.2d 606, 611-13 (Mo.1982). As for petitioner's argument that the Eighth Amendment has been violated because his sentence is disproportionate to the severity of the crime of which he was convicted, the trial record clearly supports the jury's recommendation and the trial judge's pronouncement of sentence.
The Court has carefully reviewed all pleadings filed, the submitted exhibits, and the trial transcript. It is this Court's considered opinion, that pursuant to the applicable caselaw, a majority of the petitioner's claims are procedurally defaulted. Those claims not procedurally defaulted, for the most part, are either alleged trial errors based on matters of state law which are not reviewable by this Court for federal habeas relief, or alleged trial errors which are not so prejudicial that they fatally infected the entire trial and deprived the petitioner of a fair trial and due process. Accordingly, the Court will deny petitioner's first amended petition for writ of habeas corpus.

Evidentiary Hearing
For various reasons, petitioner contends that he is entitled to an evidentiary hearing. In furtherance of this point, he has submitted documents basically consisting of affidavits of family members, affidavit of Dr. A.E. Daniel, affidavit of his 29.15 motion counsel, and his prison file (following his conviction of the subject murders). As stated before throughout this opinion, the Court finds petitioner's request meritless.
Generally, a habeas petitioner is entitled to an evidentiary hearing if s/he "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." Wilson v. Kemna, 12 F.3d 145, 146 (8th Cir.1994) citing Houston v. Lockhart, 982 F.2d 1246, 1250 (8th Cir.1993) [quoting Spillers v. Lockhart, 802 F.2d 1007, 1009 (8th Cir.1986)]. However, a habeas petitioner is not entitled to an evidentiary hearing if the record clearly demonstrates that his/her claims are procedurally barred or without merit. Wilson v. Kemna, at 146, citing Reynolds v. Caspari, 974 F.2d 946, 948 (8th Cir.1992); Wiles v. Jones, 960 F.2d 751, 754 (8th Cir.1992). Furthermore, a petitioner who has failed to develop evidence in the state courts must show cause and prejudice for that failure in order to merit an evidentiary hearing in federal court. McKee v. Nix, 995 F.2d 833, 835-36 (8th Cir.1993) citing Keeney v. Tamayo-Reyes, 504 U.S. 1, 7-9, 112 S.Ct. 1715, 1719, 118 L.Ed.2d 318 (1992).
This Court has thoroughly reviewed the trial transcript, the motion court's decisions, the Missouri Supreme Court decisions, and the documents submitted by the petitioner in support of his request for an evidentiary hearing. A large number of the petitioner's habeas claims are procedurally defaulted, thereby, precluding any evidentiary hearing before this Court. As to his remaining non-defaulted claims, plaintiff was provided several opportunities to develop his evidence before the state courts. He fails to show cause and prejudice as to why this "evidence" was not developed before the state courts. Furthermore, this Court has reviewed the submitted papers and finds that they do not add any additional evidence which would have probably resulted in a different verdict. The family members' affidavits are not particularly insightful as to the petitioner's psyche nor do they meaningfully contribute to a characterization of the petitioner as a "mentally or psychologically impaired" individual. As a part of Petitioner's 29.15 motion, *843 counsel submits her affidavit attesting that she should have, but did not, provide Dr. A.E. Daniel with a plethora of documents in order to bolster his testimony at petitioner's 29.15 motion hearing. However, this self-serving admission of "ineffective assistance" fails to establish cause pursuant to Coleman, supra. Finally, the Court notes that Dr. A.E. Daniel's affidavit fails to sufficiently show that a "miscarriage of justice" will occur if this Court does not conduct an evidentiary hearing regarding petitioner's mental status. His affidavit is clearly based upon his testing and observations of the petitioner long after he had been arrested, incarcerated prior to trial, and convicted. Even if he had been given certain documents pertaining to the petitioner's education, military service, etc., Dr. A.E. Daniels still fails to reach a definitive conclusion regarding the petitioner's mental state, especially at the time the murders were committed. He only attests that he "might" have concluded that petitioner suffered from "diminished capacity".
Petitioner fails to demonstrate that constitutional violations have probably resulted in the conviction of one who is "actually innocent", Schlup, ___ U.S. ___, 115 S.Ct. 851 (1995); Murray v. Carrier, supra; see also, McCann v. Armontrout, 973 F.2d 655 (8th Cir.1992), or "actually innocent" of the death penalty, Sawyer, supra.
Therefore, all requests for discovery and for an evidentiary hearing will be denied.

Certification of Probable Cause
Under the provisions of 28 U.S.C. § 2251, petitioner must be granted a certificate of probable cause in order to proceed with the appeal of the merits of this Court's determination. On the record before it, the Court must deny the issuance of such certificate for the following reasons:
In Barefoot v. Estelle, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1982), the Supreme Court meticulously elaborated the standard for determining whether to issue a certificate of probable cause, setting forth the following standard:
It is generally agreed that "probable cause requires something more than the absence of frivolity and that standard is a higher one that the `good faith' requirement of [28 U.S.C.] 1915." We agree with the weight of opinion in the Court of Appeals that a certificate of probable cause requires petitioner to make a "substantial showing of the denial of [a] federal right." In a capital case, the nature of the penalty is a proper consideration in determining whether to issue a certificate of probable cause, but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate.
Barefoot, 463 U.S. at 893, 103 S.Ct. at 3394-95 (citations omitted). The meaning of the "substantial showing" standard is:
In requiring a "question of some substance" or a "substantial showing of the denial of [a] federal right", obviously the petitioner need not show that he should prevail on the merits. Rather, he must demonstrate that the issues are debatable among the jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."
Barefoot, 463 U.S. at 893, n. 4, 103 S.Ct. at 3395, n. 4. Within the standards so clearly set out in Barefoot, this Court cannot find that a certificate of probable cause is warranted in this case. The law is so well-settled with regard to the grounds that petitioner raises, in his first-amended petition for writ of habeas corpus, that the issues are not subject to debate.
Accordingly,
IT IS HEREBY ORDERED that petitioner's requests for discovery and an evidentiary hearing are DENIED.
IT IS FURTHER ORDERED that petitioner Eric Adam Schneider's first-amended petition for writ of habeas corpus is DENIED.
IT IS FURTHER ORDERED that certificate of probable cause shall not issue herein.
IT IS FINALLY ORDERED that execution of sentence is further stayed until 5:00 p.m. of June 28, 1995 in order to allow petitioner an opportunity to appeal this Court's denial of a certificate of probable cause to the *844 Eighth Circuit Court of Appeals. In the event such an appeal is not sought, then the stay shall expire on June 29, 1995. If the notice of appeal is filed on or before June 28, 1995 the stay of execution of the sentence shall be determined by further order of the United States Court of Appeals for the Eighth Circuit.
NOTES
[1] Contrary to the State's assertion in its letter to the Court (# 4), filed March 22, 1995, this case has been ripe for disposition since February 14, 1992 when petitioner's appointed counsel filed his reply to the State's response, not since January 17, 1990. Furthermore, the Court is at a loss as to why the State's records show that this case has been pending since January 17, 1990 when petitioner did not file his motion for stay of execution, as well as his original petition for writ of habeas corpus, until October 17, 1990.
[2] Although the record is somewhat unclear, it appears that petitioner may have initially filed a Rule 27.26 post-conviction relief motion; however, both the motion court and the Missouri Supreme Court addressed the motion as a Rule 29.15 motion. This may be due to the fact that Rule 27.26 was repealed and replaced by Rule 29.15, effective January 1, 1988.
[3] The Court will address each ground separately as to whether or not it is procedurally barred from federal habeas review.
[4] Petitioner also contends that this Court must review his claims otherwise a fundamental miscarriage of justice will occur. This contention regards his thirty-five (35) separate instances of ineffective assistance of his trial counsel [the fundamental-miscarriage-of-justice ground is the 36th ground listed with regard to his IAC claim]. The Court will address petitioner's fundamental-miscarriage-of-justice argument after addressing each of his 35 grounds for his IAC claim regarding trial counsel.
[5] The State avers that the record is silent as to the striking of venireperson Phegley for cause. The Court's review of the trial transcript reveals that venireperson Phegley was struck for cause on the State's motion. Trial Transcript, pg. 429.
[6] There were no medical records presented at petitioner's trial or to the state courts at his post-conviction proceedings which confirms any diagnosis of hyperactivity during petitioner's childhood. This "diagnosis" was rendered by Dr. Daniel at the 29.15 motion hearing based upon 1) two post-conviction interviews with the petitioner and 2) trial testimony by petitioner's mother wherein she testified that when petitioner was approximately seven (7) years old she had taken him to an unidentified doctor who prescribed Ritalin; she gave him the Ritalin for one year. State's Exhibit I, pgs. 7-9, 25-26, 28-30.
[7] Petitioner concedes that he did not clearly articulate this claim in his Rule 91 state habeas petition. Even if he did raise it in his Rule 91 state habeas petition, the procedural bar still exists.
[8] Although the Court stated earlier in this opinion that it would not expand the record for purposes of further fact-finding, the Court did review Dr. Daniel's affidavit to see if there was anything in it which should have been presented to a jury. This affidavit is as unremarkable as the doctor's testimony at the 29.15 motion hearing. All it says is that if Dr. Daniel had been given additional information when he testified at the 29.15 motion hearings that he now had at his disposal, he might change his opinion and find that petitioner suffered from a diminished mental capacity at the time of the murders. This piece of evidence is simply another one of the petitioner's suppositions.
[9] The instruction given at petitioner's trial was modeled after MAI-CR2d. 13.44 on submission of mitigating circumstances.
[10] The present case presents a conflict as to the proper "harmless error" standard to use. In Brecht v. Abrahamson, ___ U.S. ___, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) the Supreme Court held that in most habeas cases, the correct "harmless error" standard is "whether the error `had substantial and injurious effect or influence in determining the jury's verdict.'" Id., ___ U.S. at ___, 113 S.Ct. at 1722 quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). However, in Orndorff v. Lockhart, 998 F.2d 1426 (8th Cir.1993), the Eighth Circuit Court of Appeals held that the Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) "harmless error" standard, and not the Brecht "harmless error" standard, applies in habeas cases where the state courts did not have the opportunity to review the error under the "harmless error" standard. Id., at 1430. In the present habeas case, since trial counsel did not preserve the error, the Missouri Supreme Court appeared to at first refuse to address the matter of prosecutorial misconduct, but then it did appear to address it only insofar as to whether the comments necessitated a mistrial. Since it is not clear as to whether the Missouri State Court actually "had the opportunity" to address the issue under the "harmless error" standard, this Court has reviewed the prosecutor's comments both under the Chapman standard and the Brecht standard.
[11] Missouri is a "weighing" state because the sentencer must determine that sufficient aggravating circumstances (in Missouri, at least one statutory aggravating circumstance) exist to outweigh any mitigating circumstances in order to impose the death penalty.
[12] Petitioner also alleges that Mr. Corcoran was improperly allowed to testify as to the reason Thompson's socks failed to have blood on them or in them. Petitioner fails to specifically cite to this improper testimony. The Court has thoroughly examined Mr. Corcoran's direct, cross, redirect, and recross examination and is unable to locate any testimony which even remotely hints at whether blood was found or not found on Thompson's socks. Trial Transcript, pgs. 1617-67. Mr. Corcoran did testify generally to the chemical properties of blood and the common reactions of blood-stained clothing to hot and cold water, but there is absolutely no reference to Thompson's socks. Trial Transcript, pgs. 1624-29.
[13] The state prosecutor's objection to trial counsel's line of questioning of Ms. Woodside was sustained.
[14] The crime was committed in January 1985 and petitioner's trial (excluding the pretrial hearings) was in October 1985. Petitioner was sentenced in December 1985.